No. 41,494

STATE OF KANSAS, ex rel. J. JOHN MARSHALL, County Attorney of Crawford County, *Appellee,* v. CONSUMERS WAREHOUSE MARKET, INC., *Appellant.*

(343 P. 2d 234)

Opinion filed August 3, 1959.

*H. Gordon Angwin,* of Pittsburg, argued the cause, and *Ben W. Weir,* of Pittsburg, was with him on the briefs for the appellant.

*Charles N. Henson, Jr.,* Assistant Attorney General, argued the cause, and *John Anderson, Jr.,* Attorney General, and *J. John Marshall,* County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This case is an action by the State, on the relation of the county attorney of Crawford county, to enjoin defendant business firm, Consumers Warehouse Market, Inc., from violating the provisions of G. S. 1949, 50-401 to 408, known as the Unfair Practices Act.

Defendant appeals from an order overruling its demurrer to the State's petition.

The questions involved are such that the constitutionality of the entire Act is in issue.

The action was commenced on April 6, 1956, by the filing of a verified petition which, omitting formal parts and description of real estate, reads:

"Comes now the State of Kansas, on relation of J. John Marshall, County Attorney of Crawford County, Kansas, and for its cause of action against the defendant above named, alleges and states:

"That the said J. John Marshall is the duly elected, qualified and acting County Attorney in and for the County of Crawford, State of Kansas, and as such County Attorney is authorized and empowered to prosecute this action for and on behalf of the people of the State of Kansas; that defendant is a corporation for profit deriving its origin and existence under and by virtue of the laws of the State of Kansas, and as such is authorized to engage in and transact business in said State; that defendant corporation's resident agent for service of process is A. W. McNulty and his correct post office address is 502 East 20th Street, Pittsburg, Crawford County, Kansas.

"That defendant corporation is engaged in the field of commerce, more particularly a retail outlet operated for the purpose of selling groceries and other food and household commodities to the general public; that the defendant corporation is the owner or lessee of and in fact is in possession of

the following described real estate and building located at 2506 North Broadway, R. R. No. 1, Pittsburg, Kansas, being more particularly described as follows, to-wit:

. . . . . . . . . . . . .

"That on or about the 25th day of March, 1956, in the County of Crawford, and State of Kansas, defendant corporation above named, by and through its various agents or employees, caused to be published a paid advertisement in the Pittsburg Sun, a daily newspaper published in Pittsburg, Kansas, wherein certain goods and merchandise were advertised and offered for sale at a price less than the minimum charge as provided by G. S. 1949, 50-401; that said advertistment and offering to sell at less than cost is defined in said act was so advertised and offered for sale with the intent of said defendant corporation to unfairly divert trade from competitors in the same general business and was for a purpose of impairing and preventing fair competition and for the purpose of injuring public welfare and as such is unfair competition and contrary to public policy, resulting in an unreasonable restraint of trade and further resulting in substantially lessening competition with a tendency to create a monopoly in its own particular line of commerce; that said advertisement and offer to sell was not such as to be an exemption as defined in G. S. 1949, 50-405.

"Plaintiff further alleges that said advertising, offering for sale or selling of said merchandise is contrary to the form of the statutes made and provided and as such constitutes a common nuisance to the people of the State of Kansas and that said nuisance is now in existance and should be abated.

"That the plaintiff should be allowed a reasonable attorney's fee for the prosecution of this action and the sum of Five Hundred Dollars ($500.00) is a reasonable attorney's fee.

"WHEREFORE, plaintiff prays that an injunction be granted forthwith against the defendant corporation, its agents, servants, employees, successors or assigns, restraining and enjoining them, and each of them from keeping and maintaining a common nuisance as herein alleged in or upon said premises and that said defendant corporation be specifically and perpetually enjoined and restrained from advertising, offering to sell or selling at retail any commodity or item of merchandise at less than cost as defined by G. S. 1949, 50-401, and that the premises above described and the buildings located thereon be adjudged a common nuisance.

"Plaintiff further prays that a temporary injunction be granted at the commencement of this action, without notice, to be in effect until the final determination of this matter or until further order of this Court, and that upon the final adjudication of this matter, the temporary injunction heretofore referred to be made permanent and that the costs of this action, together with a reasonable attorney's fee be allowed the plaintiff and that the same be adjudged a lien upon said real estate and that said real estate be ordered sold to satisfy all such costs and attorney's fees, and such other and further relief as to the Court may seem equitable and just."

We are told that a temporary injunction in accordance with the prayer of the petition was granted on the same day and that it is still in effect.

For reasons not shown by the record, defendant filed no pleading in response to the petition until January 8, 1959, on which date it filed a demurrer as follows:

"Comes now the Defendant and demurs to the Petition of Plaintiff on the ground that said Petition does not state facts sufficient to constitute a cause of action for the reason, among others, that the Statutes, G. S. 1949, 50-401 to 50-405, inclusive, on which the action is predicated, are discriminatory to this Defendant and are in conflict with and violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, and Section 17 of Article 2 of the Constitution of Kansas."

This demurrer was overruled on the date it was filed, and defendant has appealed, specifying such ruling as error. The appeal was heard at the regular June session of this court.

Portions of the Act in question, pertinent by virtue of the questions raised, will either be quoted or referred to, and all references are to G. S. 1949.

The purpose of the Act—to safeguard the public against the creation of monopolies and to foster and encourage competition by prohibition of unfair practices—is found in 50-402, which reads:

"It is hereby declared that any advertising, offer to sell, or sale of any merchandise, either by retailers or wholesalers, at less than cost as defined in this act, with the intent, of unfairly diverting trade from a competitor or otherwise injuring a competitor, impair and prevent fair competition, injure public welfare, are unfair competition and contrary to public policy and the policy of this act, where the result of such advertising, offer or sale is to tend to deceive any purchaser or prospective purchaser, or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create a monopoly in any line of commerce."

50-401 contains definitions of numerous terms and provisions in the Act. "Cost" is generally defined to mean invoice or replacement cost, whichever is lower, less all trade discounts except discounts for cash, plus freight charges, excise taxes, cartage, and an allowance for markup to cover a proportionate part of the cost of doing business fixed at six percent for retailers and two percent for wholesalers, absent proof of a lesser cost.

Subsections (f), (g), (h) and (i) of 50-401, read in part:

"(f) The term 'sell at retail,' 'sales at retail,' and 'retail sale' shall mean and include any transfer for a valuable consideration, made in the ordinary course of trade or in the usual prosecution of the seller's business of title to tangible personal property to the purchaser for consumption or use other than resale or further processing or manufacturing. . . .

"(g) The terms 'sell at wholesale,' 'sales at wholesale,' and 'wholesale sales' shall mean and include any transfer for a valuable consideration made in ordinary course of trade or the usual conduct of the seller's business, of title

to tangible personal property to the purchaser for purposes of resale or further processing or manufacturing. . . .

"(h) The term 'retailer' shall mean and include every person, partnership, corporation or association engaged in the business of making sales at retail within this state: . . .

"(i) The term 'wholesaler' shall mean and include every person, partnership, corporation, or association engaged in the business of making sales at wholesale within this state: . . ."

50-403 makes violation of the Act by either a retailer or wholesaler a misdemeanor and provides a penalty for such a violation.

50-404 authorizes proceedings in equity to prevent or restrain violations of the Act.

50-405 states that the provisions of the Act shall not apply to sales at retail or sales at wholesale in a number of instances such as where merchandise is sold in good-faith clearance sales if advertised, marked and sold as such, or where perishable merchandise must be sold promptly in order to forestall loss, and in other instances not here material. This section contains a further provision which is the real crux of this lawsuit:

"*Provided further,* The provisions of this act shall not apply to grain and feed dealers."

50-407 reads:

"If any section, sentence, clause or provisions of this act shall for any reason be held invalid or unconstitutional, the validity of the remaining parts hereof shall not be affected thereby."

Defendant contends the exemption of grain and feed dealers from the provisions of the Act is an unreasonable and arbitrary statutory discrimination and is in violation of the "equal protection of the laws" clause of Sec. 1 of the 14th amendment to the Constitution of the United States; that such exemption of grain and feed dealers violates Sec. 17 of Art. 2 of our own constitution, pertinent portions of which read:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state: . . ."

and that the exemption in question is not severable under 50-407, above, and therefore the entire Act is unconstitutional and void.

The State, on the other hand; contends the exemption of grain and feed dealers is a reasonable classification; that the Act is a general law operating uniformly on all within the classification created

by its terms, and that even though the exemption provision in question is held to be unconstitutional, as contended by defendant, it nevertheless is severable under 50-407, above, and does not affect the validity of the remainder of the Act.

Since its enactment in 1941 only three cases involving the Act have reached this court. In the first two of them (*State, ex rel., v. Fleming Co.*, 164 Kan. 723, 192 P. 2d 207, and *State, ex rel., v. Commercial Candy Co.*, 166 Kan. 432, 201 P. 2d 1034) it was unnecessary that we determine questions relating to its constitutionality.

*State v. Consumers Warehouse Market*, 183 Kan. 502, 329 P. 2d 638, hereafter referred to as the Consumers case, was a criminal prosecution against this defendant firm for alleged violations of the provisions of the Act. The information under which that prosecution was commenced is set out in the opinion of this court. A motion to quash the information on the ground it failed to allege an offense because sections 50-401, 402, 403, 404 and 405 of the Act violated both the federal and state constitutions and amendments thereto, was sustained. The State appealed. In support of the lower court's ruling the defendant's principal contention was that the Act is a price-fixing statute and therefore violates the *due process* guarantee of the 14th Amendment to the Constitution of the United States and Sec. 18 of our Bill of Rights. This court held such contention to be without merit and upheld the Act insofar as the due process feature was concerned. Several other challenges to the constitutionality of various provisions of the Act were made, all of which, with one exception, were held to be without merit. That exception was this: It was held that the particular portion of 50-401 (*e*) which reads:

". . . ; and purchases made by retailers and wholesalers at prices which cannot be justified by prevailing market conditions within this state shall not be used in determining cost to the retailer and cost to the wholesaler."

is so indefinite and uncertain that it is unreasonable and arbitrary, and therefore unconstitutional (see syl. 7 of the opinion). It was further held, however, that such invalid provision was severable and did not affect the remainder of the Act.

(In passing, it should be noted that at the end of line three in the next to the last paragraph of the opinion in the Consumers case, the reference to "50-405 (*e*)" is a typographical error. The reference should have been to 50-401 (*e*), and the same is hereby corrected.)

At this point attention should be called to the fact that in the

Consumers case the question of unconstitutionality of the Act because of the exemption of grain and feed dealers from its provisions —was not before this court for decision, and was neither considered nor decided. (*State, ex rel., v. Fadely*, 180 Kan. 652, syl. 3, 308 P. 2d 537.) In other words, the extent of our holding in that case was that the Act, with the exception of the one provision above noted, was not unconstitutional on any of the grounds urged. Therefore, our decision in that case is not controlling on the question now before us.

The questions in this appeal are whether the exemption of grain and feed dealers from the scope and operation of the Act violates the "equal protection" clause of Sec. 1 of the 14th Amendment to the Constitution of the United States, and violates Sec. 17 of Art. 2 of our own constitution, above, and, if so, is such provision severable from the remainder of the Act.

For reasons hereafter stated, we hold the exemption provision in question violates both of the mentioned constitutional provisions; that it is not severable, and therefore the entire Act is unconstitutional and void.

Under Sec. 1 of the 14th Amendment to the Constitution of the United States a state is forbidden to make or enforce any law which shall deny to any person within its jurisdiction the equal protection of the laws.

The purpose of the Act in question, as previously stated, is to prevent the sale—with certain specified exceptions—of merchandise at below cost, either by a retailer or a wholesaler, where such sale or offer to sell is made with the intent and with the result stated in 50-402, above. Also, as previously noted in the quotations from 50-401, above, defining "sales at retail," "sales at wholesale," "retailer" and "wholesaler," the class to be regulated constitutes all sellers at retail and wholesale of tangible personal property. Concededly, this is a broad classification, but, nevertheless, it is that fixed by statute. Grain and feed dealers who sell grain and feed at retail and wholesale of course would be under the Act were it not for the fact they are specifically exempted. This, the defendant contends, amounts to an arbitrary, fictitious and unreasonable statutory discrimination.

We agree.

Concededly, a state has a broad discretion in classification in the exercise of its power of regulation, and the Constitution of the United

States does not require that things which are different in fact are to be treated in law as though they were the same, but discrimination in a state regulatory statute must be based on differences that are reasonably related to the purpose of the statute, and the constitutional guaranty of equal protection of the laws is interposed against discriminations that are entirely arbitrary. Distinctions cannot be justified if the discrimination has no reasonable relation to the differences. (*The State v. Haun*, 61 Kan. 146, 59 Pac. 340, 47 L. R. A. 369; *McCulley v. City of Wichita*, 151 Kan. 214, 222, 223, syl. 2, 98 P. 2d 192, 127 A. L. R. 312; *Cotting v. Kansas City Stock Yards Co.*, 183 U. S. 79, 46 L. ed. 92, 22 S. Ct. 30; *Smith v. Cahoon*, 283 U. S. 553, 75 L. ed. 1264, 51 S. Ct. 582; *Morey v. Doud*, 354 U. S. 457, 1 L. ed. 2d 1485, 77 S. Ct. 1344 [1957].) In the last-mentioned case the Supreme Court of the United States had before it an Illinois statute which excepted money orders of the American Express Company from the requirement that any firm selling or issuing money orders in the state must secure a license and submit to state regulation. A competing firm attacked the law on the ground the exception stated in the statute worked a denial of the "equal protection of the laws" clause in the 14th Amendment. In upholding this contention the court said:

"Taking all of these factors in conjunction—the remote relationship of the statutory classification to the Act's purpose or to business characteristics, and the creation of a closed class by the singling out of the money orders of a named company, with accompanying economic advantages—we hold that the application of the Act to appellees deprives them of equal protection of the laws." (p. 469.)

The Act before us purports to be in part for the protection of the public. None has been pointed out, and we know of no reason why that segment of the public buying grain and feed should not be protected against a monopoly in that line of products. By the same token, should not grain and feed dealers be protected from unfair competition—the same as the retailer or wholesaler of groceries, for example? Insofar as this defendant—a retail firm engaged in selling groceries and other food and household commodities to the general public—is concerned, the Act regulates it, but permits the grain and feed dealer across the street to carry on his business in any manner he sees fit—even to the extent of bringing about the results denounced by the Act.

Taking all factors into consideration, we are of the opinion the

statutory exemption of grain and feed dealers from the operation of the Act, thus singling them out as a closed class to receive special privileges, amounts to an arbitrary and unreasonable statutory discrimination having no relation to the expressed purpose of the Act —the practical effect of which deprives defendant of the equal protection of the laws as guaranteed by Sec. 1 of the 14th Amendment to the Constitution of the United States.

Does the Act—which we think must be conceded to be a law of a "general nature"—have a "uniform operation throughout the state" as required by Sec. 17 of Art. 2 of our own constitution?

Much of what has been said may well apply to this question. The Act defines a class—*all retailers and wholesalers of tangible personal property within the state*—and purports to regulate all falling within this broad classification. It then, by the proviso in question, arbitrarily exempts "grain and feed dealers." The Act, therefore, does not operate uniformly on all members of the broad classification so created—that is, its operation is not uniform as to the class defined—and therefore may not be said to have a uniform operation throughout the state. In *Gustafson v. McPherson County,* 88 Kan. 335, 128 Pac. 186, this court considered a statute which authorized the allowance of a sum for hire of an undersheriff in counties having a population of between 18,000 and 25,000, except McPherson county. In declaring the statute bad, it was held:

"Where the subject of an act of the legislature is one of common interest to all members of a group of counties and no difference in situation or circumstance exists justifying difference in treatment and preventing the framing of an applicable general law of uniform operation upon all the members of the group alike, the exclusion of one of the counties from the benefit of the act renders it void." (syl. 1.)

and said:

"Interpreted by its title, the law is one of a general nature covering all counties of a specified class. It does not, however, have uniform operation upon all the counties of the class throughout the state. McPherson county is excluded, and the exclusion of McPherson county renders the act invalid." (pp. 336, 337.)

". . . No difference in circumstance or other valid reason existed for difference in regulation. No obstacle existed to the framing of an applicable general law of uniform operation upon all the members of the group alike. Instead of enacting such a law the legislature undertook to dispense special privileges to some of them. In so doing it stepped outside its constitutional province as a lawmaking body and the product of its action lacks the force and quality of a statute." (p. 337.)

(See also *Rambo v. Larrabee,* 67 Kan. 634, syl. 1, 2 and 5, 73 Pac. 915.)

The foregoing is applicable to the matter before us and the statutory exemption in question is held to violate the mentioned provision of our own constitution.

Does the fact the provision exempting grain and feed dealers is held to be bad, invalidate the entire Act, or is such provision severable under 50-407, above, thus leaving the remainder of the Act in full force and effect?

The rule is stated very clearly in the early case of *Central Branch U. P. R. Co. v. Atchison, T. & S. F. R. Co.,* 28 Kan. 453, in which it was held:

"While it is undoubtedly true that a statute may be constitutional in one part, and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to, the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statute." (Syl. 1.)

In *The State v. Smiley,* 65 Kan. 240, 69 Pac. 199, 67 L. R. A. 903, it was said:

"The general doctrine is that only the invalid parts of a statute are without legal efficacy. This is qualified by the further rule that if the void and valid parts of the statute are so connected with each other in the general scheme of the act that they cannot be separated without violence to the evident intent of the legislature, the whole must fall. These rules are of every-day enforcement in the courts." (p. 247.)

In *Voran v. Wright,* 129 Kan. 601, 284 Pac. 807, it was held:

"Where parts of a statute or section thereof can be readily separated, that part which is constitutional may stand while that which is unconstitutional will be rejected." (Syl. 6.)

(See also *Felten Truck Line v. State Board of Tax Appeals,* 183 Kan. 287, at pp. 300, 301, 327 P. 2d 836.)

Tested by the foregoing statements of the rule, the answer to the question is obvious. The invalid portion of the statute is not a separate and independent provision of the Act, but rather is such an integral and inseparable part of the whole scheme and purpose of the law that it may not be severed therefrom and thus leave the remainder in full force and effect. In other words, to eliminate the objectionable exemption would change the scope of the Act and make it applicable to grain and feed dealers, whereas the legislature expressly declared they are not to be included. The question of

severability here is readily distinguishable from that in the Consumers case, heretofore referred to. There it was held that a portion of 50-401 (e), which was merely one of a series of tests as to what is less than cost, was invalid, but, being severable, its invalidity did not affect the remainder of the Act.

Not so here, and we refer again to the Gustafson case in which, on the question of severability, it was held:

"The exception of McPherson county is not a separate and independent provision which may be disregarded and leave the remainder of the act effective, since to eliminate the exception would change the scope of the law and make it applicable in territory where the legislature expressly declared it should not operate." (syl. 3.)

and said:

"The declared purpose of the legislature is that the undersheriffs of McPherson county shall not receive the benefit of the law. This purpose informs the entire act, and the portion concerning McPherson county can not be eliminated without changing the whole scheme of the statute, even to the extent of making it applicable in territory where the legislature expressly said it should not operate." (p. 336.)

For the reasons stated, we therefore hold that the provision of 50-405, exempting grain and feed dealers from the scope and operation of the Unfair Practices Act, violates the "equal protection of the laws" clause of Sec. 1 of the 14th Amendment to the Constitution of the United States; that it violates Sec. 17 of Art. 2 of our own constitution, and, such provision not being severable, the entire Act is unconstitutional and void.

The judgment is reversed with directions to sustain the demurrer to the petition.