No. 43,737

OTTO H. BOYER, d/b/a Boyer's IGA Foodliner and Boyer's 7-11 IGA, et al., *Appellees*, v. WILLIAM M. FERGUSON, Attorney General, State of Kansas; and KEITH SANBORN, County Attorney, Sedgwick County, Kansas, *Appellants*.

(389 P. 2d 775)

Opinion filed March 7, 1964.

*Paul R. Kitch*, Special Assistant Attorney General, and *Keith Sanborn*, County Attorney, argued the cause, and *William M. Ferguson*, Attorney General, *J. Richard Foth*, Assistant Attorney General, and *O. B. Eidson*, Special Assistant Attorney General, were with them on the brief for the appellants.

*H. R. Kuhn*, of Wichita, argued the cause, and *Edward F. Arn*, *Richard F. Mullins*, *Milo M. Unruh*, and *Louis W. Cates*, all of Wichita, were with him on the brief for the appellees.

*Eugene A. White*, of Hutchinson, for J. S. Dillon & Sons Stores Co., Inc., as amicus curiae.

*Dale Kidwell*, *George W. Ball*, *Jack H. Greene* and *Kenneth M. Nohe*, all of Wichita, for Greater Downtown Wichita, Inc., as amicus curiae.

*Blake A. Williamson*, *James K. Cubbison*, *Donald A. Hardy*, *A. C. Cooke*, *Sheldon Crossett*, *Thomas H. Finigan*, *Joseph J. Poizner*, *Clark E. Tucker*, *Claude L. Rice*, *Powell Groner*, *Thad E. Nugent* and *James L. Baska*, all of Kansas City; *Lester M. Goodell*, *Marlin S. Casey*, *Raymond Briman*, *Murray F. Hardesty*, *Wendell L. Garlinghouse*, *Warren W. Shaw*, and *William Hergenreter*, all of Topeka; *Milton Zacharias*, *Kenneth H. Hiebsch*, *Richard A. Render* and *Albert Kamas*, all of Wichita; *Abraham Weinlood*, *William Rayl Cole*, *D. Stewart Oswalt* and *John H. Shaffer*, all of Hutchinson; as amici curiae.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action filed in the district court of Sedgwick County, Kansas, seeking to enjoin the enforcement of Chapter

220, Laws of 1963, commonly known as the "Sunday Closing Law." The plaintiffs own and operate grocery stores in Sedgwick County, and the defendants are the Attorney General of Kansas and the county attorney of Sedgwick County.

The plaintiffs are joined in a common action seeking to have the so-called "Sunday Closing Law" declared unconstitutional and invalid. Upon a trial of the issues to the district court on July 2, 1963, and on July 5, 1963, the court entered its order holding the Act unconstitutional in that it violated certain sections of the Kansas Constitution and the Fourteenth Amendment to the Constitution of the United States. It thereupon enjoined the defendants from enforcing the law, whereupon appeal was duly perfected to this court.

The question on appellate review is whether the "Sunday Closing Law" is constitutional.

The appellees (plaintiffs) herein are all individual grocery store owners and operators engaged in the selling at retail of many items prohibited by Chapter 220, Laws of 1963, hereafter referred to as the "Act," in addition to many items not prohibited. Most of the appellees' sales consist of items specifically prohibited by the Act. None of the appellees is exempt by the Act from sales after 10:00 a. m. on Sundays, either because of size, number of employees or premises of business. There are, however, other grocery store operators and businesses in direct competition with these appellees in Wichita, Sedgwick County, Kansas, who are exempt under the Act.

The parties have stipulated to practically all of the facts and issues involved. The significant stipulations relate primarily to the effect of the Act upon the Sunday sales activities of the appellees. It is unnecessary to relate these stipulations in detail except to note that they do serve to squarely present the issues hereafter discussed on appellate review.

The stipulations foreclose any doubt that a significant portion of the business of the appellees is had on Sunday, and if the Act were enforced, the appellees would sustain a permanent loss of business to their competitors who are exempt by the Act.

Chapter 220, Laws of 1963, was considered by the legislature as Senate Bill No. 137. As received and certified by the Secretary of State on April 17, 1963, it reads:

"Senate Bill No. 137

An Act prohibiting the sale or offering for sale on the first day of the week, commonly called Sunday, or the compelling, forcing or obligating of employees to sell certain named items on said day; providing certain exemptions; prescribing penalties for violations; and repealing sections 21-952, 21-953, 21-955 and 21-956 of the General Statutes of 1949.

*"Be it enacted by the Legislature of the State of Kansas:*

"Section 1. Any person who, on the first day of the week, commonly called Sunday, sells or offers for sale or shall compel, force or oblige his employees to sell any clothing; foot wear; headwear; household equipment; home, business or office furniture and furnishings; household, business or office appliances; hardware, tools, paints and wallpaper; lumber, plumbing and building materials; jewelry; silverware; watches; clocks; luggage; musical instruments; radios and television sets, record players and recording devices; motor vehicles; toilet preparations, toilet articles and cosmetics; cameras and projectors; yard goods, trimmings; meats and all other food prepared or intended for human consumption, except as otherwise provided in section 4 of this act, shall be deemed guilty of a misdemeanor and upon conviction shall be punished as provided in section 2 of this act. Each separate sale shall constitute a separate offense. For the purpose of this act, the word 'person' shall be construed to include a person, firm, association, partnership or corporation.

"Sec. 2. Upon conviction for the first offense under this act, the punishment shall be by fine of not more than one hundred dollars ($100). If it is shown upon the trial of a case involving a violation of this act that defendant has been once before convicted of an offense under this act, he shall on his second conviction and on all subsequent convictions be punished by imprisonment in jail not exceeding thirty (30) days or by a fine of not more than five hundred dollars ($500), or by both such fine and imprisonment.

"Sec. 3. As to articles of food, serving of food or meals and the sale of farm produce: (*a*) Articles of food may be sold, served, supplied and delivered at any time before 10:00 o'clock in the morning on the first day of the week, commonly called Sunday; (*b*) *this act shall not apply to any person who sells in only one place of business in Kansas, meats and other food prepared or intended for human consumption when such single place of business regularly employs not more than three (3) people and occupies less than five thousand (5,000) square feet;* (*c*) food or meals prepared on the premises to be eaten on or off the premises where sold may be sold at any time of the day on the first day of the week, commonly called Sunday; (*d*) soft drinks, candy, milk and frozen dairy products may be sold at any time on the first day of the week, commonly called Sunday; (*e*) caterers may serve meals to their patrons at any time of the day on the first day of the week, commonly called Sunday; and (*f*) farm produce may be sold by the producer on the farm where it is produced at any time.

"Sec. 4. Occasional sales of any item named herein by a person not regularly engaged in the business of selling such item, sales of such items by manufacturers or wholesalers to retailers, and sales of items customarily sold

as souvenirs, novelties, or handicraft articles, shall be exempt from the provisions of this act.

"Sec. 5. Nothing in this act shall be construed to prohibit sales on Sunday of articles for the relief of suffering, the preservation of health, safety, or the protection of persons or property, when occasioned by the happening of some unexpected event which could not have been foreseen or guarded against by reasonable diligence, nor shall this act be construed as prohibiting grain elevators from remaining open seven (7) days a week during any grain harvest period for the purpose of buying or selling of grain, *nor shall this act be construed to prohibit sales by any business selling merchandise pertaining to the repair and maintenance of farm equipment.*

"Sec. 6. If any clause, sentence, paragraph, section, or part of this act shall for any reason be declared unconstitutional by any court of competent jurisdiction it shall not affect the validity or constitutionality of any remaining sentence, clause, paragraph, section, or part of this act.

"Sec. 7. Sections 21-952, 21-953, 21-955 and 21-956 of the General Statutes of 1949 are hereby repealed.

"Sec. 8. This act shall take effect and be in force from and after July 1, 1963, and its publication in the statute book." (Emphasis added.)

For reasons hereafter stated we think the trial court was correct in holding the Act unconstitutional.

The appellees challenge the validity of the Act on the grounds: (1) That its title its defective; (2) that its provisions are vague, uncertain and ambiguous in defining the acts to be prohibited; (3) that the Act constitutes an unreasonable and arbitrary exercise of the police powers of the state because of the arbitrary, unreasonable and pointless classification of persons and businesses by its provisions, and because it deprives these appellees of their property and property rights without due process of law; and (4) that it violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.

While the appellants take issue with the appellees on each of the foregoing points, we think it necessary to consider the controlling question only.

The original form of the bill introduced in the Kansas Senate provided in Section 3 that the purpose of the Act was to promote the health, recreation and welfare of the people of this state.

Before the bill was finally enacted this section (the purpose clause) of the Act was completely eliminated along with many of the provisions designed to accomplish such purpose. Among the provisions of the Act added by amendment were the portions above italicized.

It is apparent that sometime after introduction of Senate Bill

No. 137 before the legislature, the motives, purposes and intendments of what is now called the "Sunday Closing Law" had changed considerably.

The emphasized portion of Section 3 above would suggest that the statute under consideration is an Act eliminating the competition on Sunday of grocery store owners having more than one place of business, employing more than three people, or occupying more than 5,000 square feet. Of this clause it may be said the Act makes an arbitrary and unreasonable classification of persons and businesses by its provisions.

Section 1 of the Bill of Rights of the Kansas Constitution provides: "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness."

Section 2 of the Bill of Rights of the Kansas Constitution provides in part: "All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. . . ."

Article 2, Section 17 of the Kansas Constitution provides:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state.

It must be conceded that uniform Sunday Closing Laws are within the police power of the state of Kansas, as well as any other state. However, the concession goes only to a Sunday Closing Law of uniform application that has as its admitted or ostensible purpose the promotion of the general welfare by the prohibition of certain conduct on Sunday. Here, however, the court is not strictly confronted with a Sunday Closing Law.

In the case of *State, ex rel., v. Consumers Warehouse Market* [1959] 185 Kan. 363, 343 P. 2d 234, this court struck down the so-called "Unfair Practices Act" by a firm holding. The court clearly announced the following rule in Syllabus ¶ 1:

"In the exercise of its powers of regulation, a state possesses broad discretion in the matter of classification, but discrimination in a regulatory statute must be based on differences and distinctions that have a reasonable and substantial relation to the purposes of the statute and the subject matter thereof."

In 1960, one year later, the court in *Gilbert v. Mathews*, 186 Kan. 672, 352 P. 2d 58, struck down the "New Goods Public Auction Law," stating:

"While the police power is wide in its scope and gives the legislature broad

power to enact laws . . . it cannot under the guise of the police power enact unequal, unreasonable and oppressive legislation or that which is in violation of the fundamental law. (*Little v. Smith,* 124 Kan. 237, 257 Pac. 959.)

". . . that regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against the evils which might otherwise occur . . ." (p. 677.)

Can it be said the general welfare of the public has been enhanced or promoted to any degree or in any way by the Act, or can it be said that any evil has been eliminated or will be eliminated by the Act?

The effect of this Act on the general public would be to force customers to cease doing their business at certain stores, and to shop at other places of business which are favored under the Act. Insofar as the appellees are concerned, the general public can buy anything that it could buy before the Act, except that the purchasers would have to look for one of the favored "persons" under the statute to purchase such items as the appellees are prohibited from selling. Instead of eliminating any evil the statute will create or commit evil—that is, it will eliminate the competition presently afforded by the appellees and others similarly situated.

In addition to the italicized provisions in Section 3, the italicized provisions in Section 5 of the Act, as above quoted, are ambiguous.

What did the legislature intend by such expression? Different interpretations are immediately apparent: (1) Does this provision mean that any business having for sale merchandise pertaining to the repair and maintenance of farm equipment can stay open on Sunday for all purposes and all types of sales? (2) Does the provision authorize any business, irrespective of inventory, to sell only merchandise pertaining to the repair and maintenance of farm equipment? If so, who determines what items or articles may pertain to the repair and maintenance of farm equipment? (3) Does the provision authorize a business selling only merchandise pertaining to the repair and maintenance of farm equipment to remain open on Sunday?

It was stipulated the appellees regularly sell merchandise pertaining to the repair and maintenance of farm equipment, including miscellaneous farm tools, such as pliers, hammers, wrenches, screw drivers, wire, rope, fuel cans, nails, screws and oil.

Sales forbidden by the Act are made a criminal offense. As to a criminal statute, which forbids the doing of an act in terms so vague that men of common intelligence must guess at its meaning and

differ as to its application, see *State v. Hill,* 189 Kan. 403, 369 P. 2d 365, 91 A. L. R. 2d 750. ·

In 1933 the court, in *Capital Gas & Electric Co. v. Boynton,* 137 Kan. 717, 22 P. 2d 958, declared unconstitutional Chapter 238 of the Laws of 1931. That particular act was designed for the purpose of prohibiting utility companies from engaging in the retail sales of various appliances. The court, after carefully analyzing the act, found that no feature of public welfare was actually involved, and struck down the statute on the ground that it was strictly class legislation, without any reasonable relation to the welfare of the public. In that act only certain utility companies were deprived of the privilege of selling appliances. Other individuals, firms and corporations were permitted to engage in merchandizing those same items. To the court this constituted a deprivation of the equal protection of the law.

The conclusion is inescapable that the Act in question is, as to the appellees and others similarly situated, arbitrary, unreasonable and oppressive legislation.

A careful analysis of the Act before the court, construed in the light of the applicable portion of Article 2, Section 17 of the Kansas Constitution, heretofore quoted, reveals that at least two groups of merchants are specifically exempt from the provisions of the Act; notwithstanding the fact that they are engaged in selling exactly the same items as other persons to whom the Act applies. They are: (1) Retailers of grocery products when such retailer has only one place of business, employs not more than three people, and occupies less than 5,000 square feet; and (2) any business selling merchandise pertaining to the repair and maintenance of farm equipment (under at least one construction of the Act).

Our decision on the point under consideration is controlled by *State, ex rel., v. Consumers Warehouse Market,* supra. The court there said:

"Does the Act—which we think must be conceded to be a law of a 'general nature'—have a 'uniform operation throughout the state' as required by Sec. 17 of Art. 2 of our own constitution?

"Much of what has been said may well apply to this question. The Act defines a class—*all retailers and wholesalers of tangible personal property within the state*—and purports to regulate all falling within this broad classification. It then, by the proviso in question, arbitrarily exempts 'grain and feed dealers.' The Act, therefore, does not operate uniformly on all members of the broad classification so created—that is, its operation is not uniform as to the class defined—and therefore may not be said to have a uniform operation throughout the state. . . ." (p. 371.)

Here it must be conceded the Act was designed to be a law of a "general nature," but does not have uniform operation throughout the state as required by Article 2, Section 17 of the Kansas Constitution. The Act in Section 1 prohibits persons from selling items commonly sold in a grocery store and purports to regulate all falling within this broad classification. It then, by the proviso in question in Section 3, arbitrarily exempts the so-called "Mom and Pop" store. The Act, therefore, does not operate uniformly on all members of the broad classification so created—that is, its operation is not uniform as to the class defined—and therefore may not be said to have a uniform operation throughout the state.

Where an Act is attacked as being violative of Article 2, Section 17 of the Kansas Constitution, the rules of statutory construction with the accompanying presumptions of validity have no application. The third clause of Article 2, Section 17 provides: ". . . and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state. . . ."

It is well settled that whether the Act in question is repugnant to the first and second clauses of Article 2, Section 17 shall be determined by the courts.

In a recent decision on this question, *Water District No. 1 v. Robb*, 182 Kan. 2, 318 P. 2d 387, this court said:

"Prior to the 1906 amendment to the Constitution this court adhered generally to the rule that it was for the legislature to determine whether a special law was justified. The evils inherent in the system as it existed prior to the amendment of the Constitution were discussed in *Anderson v. Cloud County*, 77 Kan. 721, 95 Pac. 583. After the Constitution was amended the legislature no longer had the power to finally determine either that a proposed law would have uniform operation throughout the state or that a local condition exists which requires a special law, and it became the duty of the courts to determine the constitutionality of an act *without reference to anything the legislature had declared, either in the act in question or in other acts.*" (p. 11.) (Emphasis added.)

In *State, ex rel., v. Hodgson*, 183 Kan. 272, 326 P. 2d 752, it was said:

"The effect of the amendment of 1906, with respect to the second clause of the section, was to transfer to the courts the 'discretion' theretofore vested in the legislature of the relative propriety of whether a general law could be made applicable, *i. e.,* 'was more expedient,' and to make the question a judicial one, without an express criterion as to 'where a general law can be made applicable.' . . ." (p. 277.)

In the *Hodgson* case this court reviewed the earlier decisions and set forth the guides resulting from such review. They are:

". . . (1) where the validity of an act is challenged, the rule of statutory construction which makes it the duty of the courts to uphold the law, if it is possible to do so, has no application however much that principal may apply to objections falling under other provisions of the constitution . . .; (2) that consideration be given the subject of the act and its operation and effect, without regard to any legislative assertion thereon . . .; (3) courts must determine the question by judicial notice of facts and conditions lying within the common public knowledge, and parol evidence is not admissible . . .; [No. 4 omitted] (5) where the object in view can be accomplished under a general law without 'public injury,' the legislature is not at liberty to enact a special law. . . .

(6) although not conclusive in itself, the existence of a general law on the subject to which a special act is directed serves 'as an apt illustration of the adaptability of a general law on the subject, and as an argument against the necessity for a special law.' . . ." (p. 279.)

Does the fact that the two provisions of the Act in question are held to be bad invalidate the entire Act, or are such provisions severable under Section 6 of the Act, thus leaving the remainder of the Act in full force and effect?

The rule is stated very clearly in the early case of *Central Branch U. P. R. Co. v. Atchison, T. & S. F. R. Co.*, 28 Kan. 453, in which it was held:

"While it is undoubtedly true that a statute may be constitutional in one part, and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to, the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statue." (Syl. ¶ 1.)

In *State v. Smiley*, 65 Kan. 240, 69 Pac. 199, 67 L. R. A. 903, it was said:

". . . The general doctrine is that only the invalid parts of a statute are without legal efficacy. This is qualified by the further rule that if the void and valid parts of the statute are so connected with each other in the general scheme of the act that they cannot be separated without violence to the evident intent of the legislature, the whole must fall. These rules are of every-day enforcement in the courts. . . ." (p. 247.)

Tested by the foregoing statements of the rule, the invalid portions of the Act are not separate and independent provisions of the Act, but rather are such an integral and inseparable part of the whole scheme and purpose of the law that they may not be severed

616

and thus leave the remainder in full force and effect. In other words, to eliminate the objectionable clauses would change the scope of the Act and make it applicable to all businesses alike, whereas the legislature expressly declared certain businesses were not to be included. (*State, ex rel., v. Consumers Warehouse Market,* supra.)

In view of our holding that the so-called "Sunday Closing Law" is invalid and unconstitutional as being repugnant to the provisions of Article 2, Section 17 of the Kansas Constitution, we find it unnecessary to determine other constitutional questions raised by the parties.

The judgment of the lower court is affirmed.

JACKSON and FONTRON, JJ., not participating.