No. 44,248

STATE OF KANSAS, ex rel. HARRISON SMITH, County Attorney of Finney County, Kansas, *Appellee*, v. FAIRMONT FOODS COMPANY, a Corporation, and ED THORPE, *Appellants*.

(410 P. 2d 308)

Opinion filed January 22, 1966.

*Robert M. Duboc*, of Kansas City, Missouri, argued the cause, and *James A. Williams, Byron C. Larson* and *George Voss*, all of Dodge City, and *Raymond Kelly*, of Omaha, Nebraska, were with him on the brief for the appellants.

*Kenton C. Granger*, Assistant Attorney General, argued the cause, and *Robert C. Londerholm*, Attorney General, and *Daniel J. High*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by the State of Kansas pursuant to K. S. A. 50-505 for injunctive relief against Fairmont Foods Company and Ed Thorpe, defendants, for an alleged violation of K. S. A. 50-503 (*a*). The trial court granted injunctive relief and the defendants have duly perfected an appeal.

The issues presented on appeal concern the constitutional validity of 50-503 (*a*), *supra*.

The facts giving rise to this controversy are not in dispute.

The State of Kansas instituted this litigation against the appellants alleging that on or about the 15th day of April, 1964, they advertised, offered to give and gave free gifts, namely one quart Corning Ware sauce makers, to the retail *consumers* of dairy products in Garden City, Finney County, Kansas. The petition alleged that these gifts were effected through the medium of premium side panels on one-half gallon milk cartons of Fairmont Foods Company; and that these side panels were redeemable at local business

establishments. The appellants have admitted the truth of the foregoing allegations except they contend that the sauce makers constitute premiums and not free gifts as alleged in the petition. The parties stipulated that the sauce makers cost Fairmont Foods Company $2.10 each; that they have a retail value of approximately $3.50 each. They attached as an exhibit to their stipulations a true copy of one of the side panels in question. (65 one-half gallon special side panels can be presented to one of the designated redemption centers for a sauce maker.)

The petition further alleged that the foregoing conduct of the appellants violated K. S. A. 50-503 (a) and sought injunctive relief.

By the various pleadings the appellants have consistently challenged the constitutionality of 50-503 (a), supra, on the various grounds hereafter treated in this opinion.

The matter was submitted to the trial court upon the pleadings of the respective parties, and the stipulations of fact hereinbefore mentioned.

Thereafter, on the 17th day of December, 1964, the trial court made findings, concluded that the appellants' conduct violated 50-503 (a), supra; that the statute was not unconstitutional for any of the reasons asserted by the appellants or for any combination of such reasons, and entered judgment granting injunctive relief.

In the year 1957 the legislature of the State of Kansas enacted legislation which now appears as K. S. A. 50-501 to 50-510, inclusive, which has come to be known as the "Dairy Practices Act."

The general policy of the state which the legislature intended to further by the act is stated in 50-501, supra, as follows:

"The practices being conducted by many dairy processors, wholesalers, and distributors in Kansas of selling below cost and in the subsidization of retail dealers through secret discounts, gifts, loans and other means and the furnishing of equipment, adversely affect the stable economy of Kansas. Such trade conduct causes unfair price discrimination, destructive and predatory trade practices, tends to reduce the price paid to the dairy farmer, increases the price paid by the consumer, and misleads the public as to the true value of dairy products, and is detrimental to the public health and welfare."

The act (L. 1957, ch. 309) is entitled "An Act relating to dairy products as therein defined, defining and prohibiting unfair trade practices in the dealing in dairy products, and providing penalties therefor, and providing for injunctive relief."

As the title indicates, the act provides that violations thereof constitute a crime and criminal penalties as well as civil remedies are provided. (See, K. S. A. 50-504 and 50-505.)

In the first section (50-501, *supra*), the legislative purpose declared two practices engaged in by many dairy *processors, wholesalers and distributors* adversely affected the stable economy of Kansas and were detrimental to the public health and welfare, these two practices being: (1) Selling below cost; and (2) subsidization of retail dealers through secret discounts, gifts, loans, etc.

The second section of the act defines certain terms used in the act.

The third section of the act (50-503, *supra*), provides that it shall be unlawful for any person engaged in business as a wholesaler, processor or distributor to do or cause to be done any of the acts specified in the subsections thereunder. It is to be noted the prohibitions are imposed upon the wholesaler, processor or distributor regardless of his intent or purpose. The prohibitions are not imposed upon "retail dealers" unless they are also "wholesalers, processors or distributors."

Subsection (*a*), which the appellants are herein charged with violating, and the constitutionality of which they challenge, in pertinent part reads:

"Furnish, *give,* rent, lease, or lend *to a retail dealer or consumer* any money, equipment, fixtures, ice cream cabinets or bulk milk dispensers, supplies, or *other things having a real or substantial value,* or any expendable supplies commonly provided in connection with sales of dairy products to the consumer (except that he may sell dairy products) except it shall be lawful to lend or rent ice cream cabinets, milk dispensers or milk coolers for periods of not to exceed ten (10) days in any one period of six (6) consecutive months. . . ." (Emphasis added.)

Various other transactions with retail dealers and consumers are prohibited by subsections (*b*) through (*k*) and by subsection (*n*).

Subsections (*l*) and (*m*) were designed to prohibit sales below cost and the granting or making, either directly or indirectly, to any retail dealer of any secret discount or of any rebate. Subsections (*l*) and (*m*) were declared to be in conflict with the state and federal constitutional guarantees of due process in *State, ex rel., v. Fleming Co.,* 184 Kan. 674, 339 P. 2d 12.

The appellants throughout this litigation have consistently contended that subsection (*a*) involved in this case is inseparable from subsections (*l*) and (*m*), and that subsection (*a*) otherwise violates the due process and equal protection guarantees of both the federal and state constitutions.

The question has been settled since *Nebbia v. New York,* 291 U. S. 502, 78 L. Ed. 940, 54 S. Ct. 505, 89 A. L. R. 1469 (1934), that

regulation of the dairy industry is properly within the police power of the state. In the *Nebbia* case it was stated:

"The fluid milk industry is affected by factors of instability peculiar to itself which call for special methods of control. Under the best practicable adjustment of supply to demand the industry must carry a surplus of about 20 percent, because milk, an essential food, must be available as demanded by consumers every day in the year, and demand and supply vary from day to day and according to the season; but milk is perishable and cannot be stored. . . . The fact that the larger distributors find it necessary to carry large quantities of surplus milk, while the smaller distributors do not, leads to price-cutting and other forms of destructive competition. . . ." (pp. 517, 518.)

Further in the *Nebbia* case the court said:

"So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court *functus officio*. . . ." (p. 537.)

The principle of the *Nebbia* case has been recognized by this court in *Carolene Products Co. v. Mohler*, 152 Kan. 2, 16, 102 P. 2d 1044; and in *State, ex rel., v. Fleming Co.*, supra.

Once a subject is found to be within the scope of the state's police power, the only limitations upon the exercise of such power are that the regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against the evils which might otherwise occur. Within these limits the legislature is the sole judge of the nature and extent of the measures necessary to accomplish its purpose. (*Schaake v. Dolley*, 85 Kan. 598, 605, 118 Pac. 80; and *Carolene Products Co. v. Mohler*, supra.)

In a legal opinion of this nature challenging the constitutional validity of a statute, the court need not be concerned with the legislative wisdom of the act or engage in extended discourse on the subject. The act in question is obviously designed to prohibit unfair trade practices which are prevalent among the wholesalers, processors and distributors of dairy products, and which cause instability in the dairy industry.

The question presently before the court is not the general power of the legislature, but whether the particular enactment in question was a legal and constitutional exercise of the power to regulate. The reasonableness of restrictions imposed by the legislature by the

exercise of the police power is a judicial matter, and all presumptions are in favor of constitutionality of the act. Within the zone of doubt and fair debate legislation is conclusive upon the court and must be upheld. (*Gilbert v. Mathews,* 186 Kan. 672, 678, 352 P. 2d 58; and see, *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P. 2d 357.)

Another proposition of law frequently expressed is that the court will not consider the constitutionality of a statute in any particular not necessarily involved to a decision. (*State v. Consumers Warehouse Market,* 183 Kan. 502, 329 P. 2d 638; and cases cited therein.) The holding in the *Fleming* case stands for the same proposition.

In *Fleming* the lower court held the entire Dairy Practices Act to be unconstitutional, but this court on appeal limited the decision to subsections (*l*) and (*m*), because only sales of milk at a price below the appellee's cost at point of delivery were charged in the petition. The court noted the act contained a section specifying that the invalidity of any section shall not render the entire act invalid (K. S. A. 50-510), and the court went on to say: "Moreover, this court only considers constitutional questions when the complaining party is affected by the statute complained of." (p. 683.) *Marks v. Frantz,* 179 Kan. 638, 298 P. 2d 316, was cited and quoted for this proposition.

In holding subsections (*l*) and (*m*) unconstitutional this court said:

"It must be evident that a criminal statute, which *neither* requires a criminal intent in doing the proscribed act *or* defines with exactness the act forbidden, *and* further is indefinite as to exceptions as to liability, must be considered to deny due process to one against whom the statute is asserted." (p. 682.) (Emphasis added.)

The appellants contend as applied to them the provisions of 50-503 (*a*) deprive them of due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States and Section 18 of the Bill of Rights of the Constitution of the State of Kansas, because it fails to define with sufficient exactness the acts forbidden and fails to require a criminal intent in doing the proscribed act.

As already noted, the act provides that a violation thereof is a criminal offense, and its constitutionality is therefore to be determined according to the standards applied to criminal statutes generally, even though the pending action is a civil suit. (*State, ex rel., v. Fleming Co.,* supra.)

Whether a statute is vague and indefinite and therefore fails to inform the accused of the nature and cause of the accusation against him, as required by Section 10 of the Bill of Rights of the Constitution of Kansas, is determined by the same test applicable to whether the statute violates the due process clause under the Fourteenth Amendment to the Federal Constitution. The Fourteenth Amendment grants no greater protection to an accused in that respect than does Section 10 of the Bill of Rights of the Kansas Constitution. (*State v. Hill*, 189 Kan. 403, 412, 369 P. 2d 365, 91 A. L. R. 2d 750.)

The appellants rely upon the proposition that a criminal statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, lacks the first essential of due process of law, citing *State v. Ashton*, 175 Kan. 164, 262 P. 2d 123; and *Connally v. General Const. Co.*, 269 U. S. 385, 70 L. Ed. 322, 46 S. Ct. 126.

The appellants herein are charged with violating the prohibition in 50-503 (*a*), *supra*, against the giving of "other things having a real or substantial value." The appellants ask what things have "real or substantial value," and argue the terms "real value" and "substantial value" in common parlance are both relative; that they are used in varying circumstances to refer to values ranging anywhere from trifling to sizeable in amount; and that it is impossible to tell how trifling in value a thing can be or how sizeable in value it must be in order to come within the purview of this statute.

They rely on *State v. Hill*, supra, where this court held invalid a Sunday closing law because of vagueness in the phrase "or other articles of immediate necessity."

Moreover, the appellants argue there is no construction of the word "things," as it is used in this phrase, that is free from substantial doubt. They argue men of common intelligence must guess as to what the word "things" means in context, and that the statute therefore lacks the degree of definiteness which due process requires.

We fail to see merit in this argument of the appellants. The phrase "other things having a real or substantial value," as used in 50-503 (*a*), *supra*, is sufficiently definite to apprise the appellants of that which the act prohibits. Here, for example, it was stipulated

the one quart Corning Ware sauce makers given by the appellants to retail consumers of dairy products cost Fairmont Foods Company $2.10 each; that they have a retail value of approximately $3.50 each. As applied to the facts in this case, the so-called premium represents a gift of approximately 6.6 cents per gallon of Fairmont milk purchased by consumers on the basis of Fairmont's cost, or a gift of approximately 10.8 cents per gallon of Fairmont milk purchased by consumers if based upon the retail value of the sauce maker.

It is fair to say the Corning Ware sauce maker is given because it has real or substantial value, which the consumers of milk readily understand. By reason thereof consumers purchase the product of Fairmont Foods Company as distinguished from the milk sold by Fairmont's competitors.

A disclosure of the redemption centers on the milk carton's side panel in evidence reveals the practice of Fairmont, which is here being challenged, is limited to the western sections of Kansas and Oklahoma, and the Panhandle of Texas, thus indicating a familiar tactic used by large industrial concerns to gain monopoly control.

In the *Hill* case, upon which the appellants rely, the court found the expression "other articles of immediate necessity" to be fatal to the Sunday closing law because of vagueness. The decision was based upon the fact that the phrase had no objective meaning. Here, however, the term "real or substantial value" represents a well-understood objective meaning.

The expression "other valuable thing" as it appeared in R. S. 1923, 21-551 (and these words still exist in K. S. A. 21-551) relating to the crime of cheating by false pretenses, was considered in *State v. Tower*, 122 Kan. 165, 251 Pac. 401. There Justice Burch in a scholarly opinion discussed the history of the term "other valuable thing" and traced the word "thing" to the criminal statute of 33 Henry VIII.

While the court in the *Tower* case did not concern itself with any due process question as to the vagueness of the term, the term has been used in common law crimes for so many years that an attack upon these words as being vague is unrealistic.

The term "anything of value" appears in K. S. A. 21-531 and makes it a crime for a person to take "anything of value" from a bank. The term "valuable thing" is used in K. S. A. 21-533, which defines grand larceny.

The terms "real value" and "substantial value" connote an objective existence. The adjective "real" is defined as "actual, of or relating to things; having an objective independent existence." (Webster's Third New International Dictionary.) The adjective "substantial" in the same dictionary is defined as "not seeming or imaginary: not illusive: real, true."

These terms, "real" and "substantial," add certainty and objectivity to the word "value." The expression "other things having a real or substantial value" provides a reasonably definite objective standard which one reading the act can understand and contemplate what conduct it is that the act proscribes.

The appellants are charged in this action with violating the prohibition in 50-503 (*a*), *supra*, against the making of gifts to consumers. This section of the statute prohibits the making of any gift regardless of the intent or purpose of the transaction. The appellants argue this is wholly unreasonable, arbitrary and therefore an unconstitutional regulation.

It is, of course, axiomatic due process requires that control over the economy of the dairy industry be exercised in a reasonable and not in an arbitrary or capricious manner. The means selected to effect such control must be reasonably adapted to accomplish the legislative purpose.

The court in *Fleming,* where it discussed subsections (*l*) and (*m*) of 50-503, *supra,* recognized that the legislature had power to regulate and provide for the accomplishment of the purposes set forth in 50-501, *supra.*

The absence of a required intent in *Fleming* was merely one of the combined alternative factors which led to holding the provisions of subsections (*l*) and (*m*) unconstitutional. No opinion was expressed on the absence of an element of intent standing alone.

The appellants argue there is nothing in the first section of the act to indicate that the legislature itself felt the making of gifts to consumers was responsible for any of the evils sought to be remedied by the act, for in that section the legislature attributed all of such evils to the practice of selling below cost and the subsidization of retail dealers.

We think it unnecessary to dwell upon this particular argument inasmuch as the title to the act itself is sufficient to embrace the provisions of 50-503, *supra,* and the complete omission of 50-501, *supra,* would not alter the constitutionality of the act. Furthermore,

it may be argued that shortcutting the retail dealer by making gifts directly to the consumers is merely an indirect way of selling below cost or subsidizing the retail dealer.

The appellants argue the making of gifts to consumers, absent some wrongful intent, is merely a form of advertising and promoting the sales of the donor's products, and has no more relation to selling below cost, subsidizing of retail dealers or any adverse effect whatsoever than does any other form of advertising.

The appellants rely upon *Fairmont Co. v. Minnesota*, 274 U. S. 1, 71 L. Ed. 893, 47 S. Ct. 506, for the proposition that statutes which purport to make conduct, which is otherwise lawful, a crime, without making wrongful intent or adverse effect an element thereof, have no real or substantial relation to any legitimate legislative objective and are unconstitutional.

This case was decided prior to the *Nebbia* decision, the effect of which was to overrule the *Fairmont Co. v. Minnesota* case. (See, *State v. Lanesboro Produce & Hatchery Co.*, 221 Minn. 246, 21 N. W. 2d 792; and see, also, *Ferguson v. Skrupa*, 372 U. S. 726, 10 L. Ed. 2d 93, 83 S. Ct. 1028, 95 A. L. R. 2d 1347.)

The common law rule which requires the element of scienter to hold a person criminally responsible for his conduct contains a well-recognized exception. It is found in *Smith v. California*, 361 U. S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215. There Justice Frankfurter stated in his concurring opinion:

". . . The rule that scienter is not required in prosecutions for so-called public welfare offenses is a limitation on the general principle that awareness of what one is doing is a prerequisite for the infliction of punishment. See *Morissette v. United States*, 342 U. S. 246. . . ." (p. 162.)

The case of *United States v. Balint*, 258 U. S. 250, 66 L. Ed. 604, 42 S. Ct. 301, acknowledged the public welfare doctrine and found that under proper circumstances, the absence of the scienter requirement in a criminal statute does not constitute a violation of due process. The court stated:

"While the general rule at common law was that the *scienter* was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it . . ., there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court. It has been objected that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law. But that objection is considered and overruled in *Shevlin-Carpenter Co. v. Minnesota*, 218 U. S. 57, 69, 70, in which it was

held that in the prohibition or punishment of particular acts, the State may in the maintenance of a public policy provide 'that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.' Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of *mala in se.* . . ." (pp. 251, 252.)

The foregoing doctrine has been recognized in this jurisdiction many times. (*State v. Merrifield,* 180 Kan. 267, 303 P. 2d 155; *State v. Beam,* 175 Kan. 814, 267 P. 2d 509; *State v. Brown,* 173 Kan. 166, 244 P. 2d 1190; *State v. Avery,* 111 Kan. 588, 207 Pac. 838; and *City of Hays v. Schueler,* 107 Kan. 635, 193 Pac. 311.)

It is readily apparent in our economic system of free enterprise that those engaged as wholesalers, processors and distributors in the milk industry would not give to consumers of their product 6.4 cents per gallon of milk without in turn anticipating some improvement in their economic position over that of their competitors. To require a prosecutor to prove scienter—a design on the part of the offender to destroy competition by the unfair trade practice prohibited would be almost an insurmountable burden.

The milk industry is affected with a public purpose and since *Nebbia* it has been constitutionally subject to regulation. The emphasis in the Dairy Practices Act is upon achievement of some social betterment in the economy of Kansas rather than upon punishment of the crime.

We therefore hold that the absence of a required criminal intent in doing the acts proscribed by 50-503 (*a*), *supra,* is not fatal under the due process clause of the Federal Constitution. We further hold the acts proscribed by 50-503 (*a*), *supra,* have a reasonable relation to a proper legislative purpose expressed in the act.

The appellants contend 50-503 (*a*), *supra,* deprives them of due process of law and the equal protection of the laws as guaranteed to them by the Fourteenth Amendment to the Constitution of the United States and Sections 1 and 18 of the Bill of Rights and Section 17 of Article 2 of the Constitution of the State of Kansas, because the statute arbitrarily discriminates against the appellants by prohibiting them from engaging in promotional activities which many of their competitors are left free to use.

The act purports to apply only to persons engaged in the dairy industry as a wholesaler, processor or distributor. (50-503, *supra.*) The terms "distributor" and "wholesaler" are defined to mean

persons engaged in the business of distributing or selling dairy products "for resale." (K. S. A. 50-502 [b] and [f].) The term "processor" is defined as any person that is processing or manufacturing dairy products. (K. S. A. 50-502 [d].) The act thus covers only those engaged in the dairy industry who process their own dairy products and those who distribute or sell for "resale."

Dairies which do not process but purchase milk products from a processsor and then sell these products exclusively to consumers through home deliveries are not covered by the act. Nor are the retail store operations of such dairies covered. The appellants argue such dairies are as much competitors of the appellants as are persons subject to the provisions of the act. The appellants rely primarily upon the provisions of Article 2, Section 17 of the Kansas Constitution as construed in *State, ex rel., v. Consumers Warehouse Market,* 185 Kan. 363, 343 P. 2d 234, and in *Boyer v. Ferguson,* 192 Kan. 607, 389 P. 2d 775.

We fail to see sufficient merit in this argument to give it much consideration. The retailer in the dairy industry is dependent upon the wholesaler, the processor, or the distributor for the source of his dairy products. Furthermore, the retailer is one step removed from the wholesaler, processor and distributor in the flow of dairy products from the producer to the ultimate consumer. Obviously, if the wholesaler, the processor and the distributor are controlled by the act, the evils which the legislature sought to prevent will be accomplished without including the retailer who is dependent upon these parties for the source of his dairy products.

The final contention of the appellants is that the provisions of 50-503 (a), *supra,* which the appellants are charged with violating, are inseparable from the provisions of K. S. A. 50-503 (l) and (m), which were held to be unconstitutional in the *Fleming* case.

They rely on *Boyer v. Ferguson,* supra, where a statute involved was composed of eight sections. Section 3 was divided into six subsections, one of which was found to create an unconstitutional classification; and a portion of section 5 was also found to be unconstitutional because of vagueness. The statute also contained a savings clause similar to that in the Dairy Practices Act. Notwithstanding this separability clause, the court found the two invalid provisions were inseparable from the rest of the act and rendered the entire act invalid. In so holding the court applied the rule set forth in *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.,* 28 Kan. 453, which held:

"While it is undoubtedly true that a statute may be constitutional in one part, and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statute." (Syl. ¶ 1.)

Can the prohibition against making gifts to consumers set forth in 50-503 (*a*), *supra*, be separated from the provisions of 50-503 (*l*) and (*m*), *supra*, without doing violence to the evident intent of the legislature?

The appellants argue:

". . . the legislative purpose behind this Act, as expressly set forth in the first section thereof, was to regulate sales below cost and subsidization of retail dealers. The prohibition against the making of gifts to consumers could not in any conceivable way further the legislative objective of regulating and subsidization of retail dealers. This prohibition could, however, implement the regulation of sales below cost; for a wholesaler, processor or distributor of dairy products could, by making a gift to a consumer, turn a sale, which otherwise would have been above cost, into a sale below cost. Reading the Act as a whole, it is obvious that the prohibition against the making of gifts to consumers was enacted to prevent such an evasion of Subsection (*l*)'s prohibition against sales below cost.

"It is also obvious that, since Subsection (*l*) has been declared invalid, there is no longer any prohibition against selling below cost; and those covered by this Act may now do directly the only thing which the prohibition in question was designed to prevent them from doing. Certainly the legislature would never have enacted this prohibition without Subsection (*l*). The provisions are not separate and independent, but rather one was an inducement to the other. . . ."

This court in the *Fleming* case was concerned primarily with the vagueness of the language set forth in subsection (*l*), "cost to the wholesaler, processor or distributor at the point of delivery;" and with the exception, "except a person may sell either such dairy products or expendable supplies at prices made in good faith to meet existing lawful competition;" and the language of subsection (*m*), "except that deviations from such prices may be given when made in good faith to meet existing lawful competition."

The Dairy Practices Act contains a separability provision (K. S. A. 50-510), which reads as follows:

"The provisions of this act shall apply to the business of dealing in dairy products only, and if any section, sentence, subdivision or clause herein shall for any reason be held to be invalid or unconstitutional, such decisions shall not affect the validity of the remaining portions of this act."

The provisions of 50-503 (*a*), *supra*, prohibit the wholesaler, processor or distributor in the dairy industry from furnishing, giving, renting, leasing, or lending to a *retail dealer* or *consumer* any money, equipment, fixtures, ice cream cabinets or bulk milk dispensers, supplies, or other things having a real or substantial value, or any expendable supplies commonly provided in connection with sales of dairy products to the consumer (except that he may sell dairy products), etc. Here *the consumer* as well as the retailer is included, and many acts are proscribed which go beyond the act which the appellants are charged with violating. All are reasonably designed to accomplish the legislative purpose. It might even be argued the prohibitions enjoined upon wholesalers, processors and distributors in the dairy industry by the provisions of 50-503 (*a*), *supra*, are sufficiently broad to encompass sales below cost and subsidization of retail dealers. In the *Fleming* case the constitutional attack was limited by the pleadings to 50-503 (*l*) and (*m*).

In *Fleming* this court did not condemn the legislative purpose declared by the Dairy Practices Act.

In view of the foregoing we think subsections (*l*) and (*m*) of 50-503, *supra*, are separable, and giving effect to the presumptions which favor the constitutionality of the provisions of the act under attack, we hold the appellants have failed to sustain the burden of showing 50-503 (*a*), *supra*, to be unconstitutional.

The judgment of the lower court granting injunctive relief is affirmed.