THE STATE OF KANSAS v. JOHN CAIRNS, JR.

No. 12,952.   (68 Pac. 621.)

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS — *Express Agent.* The agent of an express company who in good faith delivers to the consignee, or to another upon his order, goods carried by his principal, consigned "C. O. D.," and collects the charges thereon, is not guilty of selling intoxicating liquors, though he has reason to believe or knows the goods so consigned and delivered to be intoxicating liquors.

2. —————— *Where Sale is Made.* In such case it is the consignor who delivers the intoxicating liquor to the carrier upon an order from the consignee that makes the sale, and the sale is made at the place of delivery to the common carrier.

Appeal from Osage district court; WILLIAM THOMSON, judge. Opinion filed April 5, 1902. Reversed.

*A. A. Godard*, attorney-general, for The State.

*Austin & Hungate*, for appellant.

The opinion of the court was delivered by

POLLOCK, J. : Appellant was acting as agent of the Wells-Fargo Express Company at Scranton, Osage county. A box enclosing a jug containing intoxicat-

ing liquor—whisky—consigned "C. O. D.," with charges $3.85, to one Mack Husband, was carried by the express company to Scranton. The evidence fails to disclose from what place the box was shipped. It appears that Husband did not want the box or failed to pay the charges and take it. Some six or eight weeks after its receipt at the express office in Scranton some boys went to appellant, and one Shepard inquired whether there were any extra "C. O. D.'s" there. Appellant told him that Husband had one there which he did not want. Shepard asked if he could get it, and appellant said he would have to get an order from Husband. Thereafter appellant went to Husband's house, informed him that some boys wanted to get his "C. O. D.," to which Husband answered : "All right; let them have it." Appellant said that he would have to have an order from Husband, and thereupon appellant wrote the following order, which Husband signed :

"MARCH 18, 1901.

"*Mr. J. F. Wolf:*

"Please let Mr. Curnice Shepard have my box C. O. D., and oblige, MACK HUSBAND."

It further appears that Shepard paid the charges, receipted for the box on the delivery book of the express company, and took it away with him. For this transaction appellant was prosecuted, and convicted on a charge of selling intoxicating liquors to Shepard. He appeals.

The important controversy in this case arises upon the instructions. It is contended by counsel for appellant that instruction No. 9 is misleading, and that instruction No. 10 is both erroneous as applied to the facts of this case and as an abstract proposition of law. These instructions read :

"9. If you believe beyond a reasonable doubt that

the defendant, at the time of the alleged sale, was the agent of the Wells-Fargo Express Company, a carrier of freight, to whom was entrusted the duty of carrying a jug of whisky to one Mack Husband at Scranton, and that the defendant had good reason to and did believe that the jug contained whisky, an intoxicating liquor, and that the defendant, instead of delivering it to Mack Husband or to any one authorized by Mack Husband to receive it, sold and delivered the same to one Shepard for four dollars or any other sum, and delivered the said jug of whisky to said Shepard for the purpose of transferring the title thereof to Shepard, and that the transaction occurred in Osage county, state of Kansas, on or about the 18th day of March, 1901, and that at such time said defendant, nor those for whom he may have been acting, did not have a permit to sell intoxicating liquors under the law, then you will find the defendant guilty as charged.

"10. If you believe from the evidence beyond a reasonable doubt that some one had sent through the Wells-Fargo Express Company a jug of whisky, an intoxicating liquor, to Mack Husband at Scranton, the price whereof or any portion thereof to be collected upon the delivery of said whisky to said Mack Husband, and that defendant knowing or having reason to believe that said jug contained whisky, delivered the same to witness Shepard with the consent of Mack Husband or upon his order, and said defendant collected the price of said whisky or any portion thereof from witness Shepard, and thereupon delivered the same to said Shepard, and that at said time neither the railroad company nor Wells-Fargo Express Company nor the defendant had any permit to sell intoxicating liquors, that these things occurred in Osage county, in the state of Kansas, on the 18th day of March, 1901, then you will find the defendant guilty, whether he thought he was committing a crime or not."

These instructions point out the theory upon which the case was submitted to the jury. If this theory is determined to be wrong in principle, the case must be

reversed. Instruction No. 9 may be correct as an abstract proposition of law, but it is not applicable to the facts found in the record. There is no contention made by the state that Mack Husband did not authorize appellant to deliver the box to Shepard or that Shepard was not authorized to receive it. The important question of fact at issue is whether in making the delivery appellant acted in good faith as the agent of the express company and not as the agent of the consignor or upon his own responsibility. Upon this issue of fact arises the issue of law involved in this case.

Is the agent of an express company or other common carrier for hire, who, in good faith, delivers goods carried by his principal, consigned "C. O. D.," and collects and returns the charges thereon, guilty of selling intoxicating liquors to the party to whom delivery is made, even though he knows the goods so consigned and delivered to be intoxicating liquors? This question was answered in the affirmative by the trial court in instruction No. 10 ; for it must, we think, be conceded, if delivery in such case may be made to the consignee without guilt, it may also be made in good faith upon the order of the consignee. The determination of this issue of law depends on the answer to be given to the question as to where and by whom the sale was made, as it is self-evident that to sustain a conviction of the agent it must be shown that the sale was made by the agent and in the county where the prosecution is begun.

The weight of authority supports the rule that, where goods are ordered to be shipped "C. O. D.," the contract of sale is completed upon the vendor's delivering the goods to a common carrier, although with instructions to collect the price from the con-

50—64 KAN.

signee before delivery to him. This rule obtains where the goods sold are intoxicating liquors as in other cases. In 17 A. & E. Encycl. of L. (2d ed.), at page 300, it is said:

"A somewhat different question is presented when the sales are made C. O. D. There is much diversity of opinion as to whether sales of this character are to be deemed absolute sales on the part of the vendor with a provision for withholding delivery until actual payment, so as to preserve the lien for the price, or only as executory contracts of sale not completed until actual delivery into the hands of the buyer. In a number of decisions it has been held that, for the purpose of determining whether the seller has violated the liquor laws in force where the buyer lives, a sale C. O. D. is not complete until delivery, acceptance, and payment of the price by the person ordering the liquors. At least, so far as cases dealing with intoxicating liquors are concerned, however, the weight of authority is against the foregoing view, and it is generally held that, where intoxicating liquors are ordered to be shipped C. O. D., the sale is completed when the liquor is delivered to the carrier."

In the well-considered case of *Commonwealth v. Fleming*, 130 Pa. St. 138, 18 Atl. 622, 5 L. R. A. 470, 17 Am. St. Rep. 763, it was said:

"If a liquor dealer in Allegheny county receive an order for liquor, to be shipped to the purchaser in Mercer county, C. O. D., and in pursuance of the order the liquor be delivered to a common carrier in Allegheny county, for transportation to the vendee, at the latter's expense, C. O. D., the delivery to the carrier is a delivery to the purchaser in such a sense as to complete the sale in Allegheny county."

In the opinion it was said:

"The carrier, being the agent of the purchaser to receive the goods, does receive them from the seller in Allegheny county, and the delivery to him for the purpose of transportation was a delivery to the pur-

chaser.   This is the legal and certainly the common understanding of a sale.   The statute, being criminal, must be strictly construed ; and only those acts which are plainly within its meaning, according to the common understanding of men, can be regarded as prohibited criminal acts.   We cannot consider, therefore, that a mere undertaking on the part of the carrier to collect the price of the goods at the time of his delivery to the purchaser, though the payment of the price be a condition of the delivery, can suffice to convert the seller's delivery to the carrier for transportation and collection into a crime."

In the case of *State v. Flanagan*, 38 W. Va. 53, 17 S. E. 792, 22 L. R. A. 430, 45 Am. St. Rep. 832, it was held :

"A party residing in Doddridge county sends a postal card through the mail to a licensed wholesale liquor dealer doing business as such in Wood county, directing a package of whisky to be sent him by express C. O. D.   The order thus sent having been received in Wood county, and having been complied with by delivering the package marked 'C. O. D.,' addressed to the purchaser in Doddridge county, *held*, that under the circumstances the sale was made in Wood county, and said wholesale merchant was not liable, under indictment in Doddridge county, for retailing liquors without license in Doddridge county."

In the case of *Pilgreen v. The State*, 71 Ala. 368, it was held :

"When goods were forwarded through an express company, by instructions of the purchaser, marked 'C. O. D.,' the carrier is the agent of the purchaser to receive the goods from the seller, and the agent of the seller to collect the price from the purchaser, and the sale is complete when the goods are delivered to the carrier."

To like effect are *State v. Carl & Tobey*, 43 Ark. 353, 51 Am. Rep. 565 ; *James v. Commonwealth*, 102 Ky.

108, 42 S. W. 1107; *Garbracht v. The Commonwealth*, 96 Pa. St. 449, 42 Am. Rep. 550, and many other cases.

While the above cases differ from the case at bar in this, that the agent of the express company is defendant in this prosecution and the seller who shipped the liquors by express was defendant, being prosecuted in the county where delivery was made by the common carrier to the purchaser, in those cases, yet the legal principles necessarily established by the above decisions are, that the sale is made where the liquors are received by the carrier, and not where delivery is made by the carrier to the purchaser, and that the agent of the express company, acting in good faith for his principal, makes no sale and is guilty of no offense under the law.

It is the further contention of counsel for the state that appellant did not in this case act in good faith as the agent of the express company in making delivery of the liquor and in the collection of the proceeds, and that this contention is fully borne out by the evidence found in the record. We have carefully considered the evidence, and this contention would have great weight had this view of the case been submitted to the jury, but this is not the theory upon which the guilt or innocence of the defendant was submitted to the jury, as, under instruction No. 10, the good or bad faith of the defendant in the transaction, as well as the capacity in which he acted, became wholly immaterial.

It follows that, for error committed in the charge of the court to the jury, the judgment must be reversed and a new trial awarded.

JOHNSTON, CUNNINGHAM, JJ., concurring.