No. 37,594

RICHARD MANNING, *Petitioner,* v. E. F. DAVIS, Sheriff of
Dickinson County, *Respondent.*

(201 P. 2d 113)

Opinion filed December 27, 1948.

*Bruce C. Heath,* of Abilene, and *Barton E. Griffith,* of Topeka, argued the cause, and were on the briefs for the petitioner.

*John M. Rugh,* county attorney of Dickinson county, and *Edward F. Arn,* attorney general, argued the cause, and *C. Harold Hughes* and *L. P. Brooks,* assistant attorneys general, were with them on the briefs for the respondent.

The opinion of the court was delivered by

HARVEY, C. J.: This is an original proceeding in habeas corpus. The facts disclosed by the record are as follows:

On November 20, 1948, the county attorney of Dickinson county filed in the county court of that county a verified complaint which contained two counts. Count one charged that on or about the 20th day of November, 1948, in the county of Dickinson, state of Kansas, Richard Manning and others did then and there unlawfully keep and have in their possession intoxicating liquor for their personal use, or otherwise. Count two charged that on or about the 20th of November, 1948, in a described premises in the county of Dickinson and state of Kansas, Richard Manning and others kept and maintained a common nuisance to the people of the state, and that the defendant did then and there unlawfully keep, and does now unlawfully keep and maintain, a place where intoxicating liquors were and are sold, bought and given away in violation of law, and where persons were and are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, and where intoxicating liquors were and are kept for sale, barter and delivery in violation of law, and that intoxicating liquors, bottles, glasses, kegs, cases, furniture, fixtures and other property were and are unlawfully kept and used by the said defendant in keeping and maintaining such common nuis-

ance, all of which was and is done by said defendant contrary to the statutes in such cases made and provided and against the peace and dignity of the state of Kansas. Upon this complaint a warrant was issued to the sheriff, who took Richard Manning into his custody and he was brought into court. Defendant asked for a continuance to November 24, which request was granted, and the court fixed his recognizance in the sum of $500. This was not given and defendant was committed to jail. We are told there were subsequent continuances to the 24th of December.

On November 30, 1948, Richard Manning filed in this court his petition for a writ of habeas corpus, which alleged the proceedings of his arrest and commitment and that he was then in the custody of the respondent sheriff of Dickinson county, and further alleged that his imprisonment and the restraint of his liberty is illegal and void for the following reasons: (a) That he is being restrained of his liberty and property without due process of law under the fourteenth amendment of the federal constitution; (b) that he was arrested under section 21-2101 of G. S. 1935, which statute is unconstitutional and void for the reason that the same cannot now be supported by section 10, article 15 of our constitution; (c) that by reason of the recent popular referendum of the duly qualified voters of the state, when the electors voted by a majority of 63,984, section 10, article 15 of our constitution was repealed by substituting in its place house concurrent resolution No. 2, being chapter 248, Laws of 1948; "and that all laws in support thereof have become null and void as a result of the repeal of said amendment." It was further alleged that by reason of his arrest and commitment and his inability to give bond and his restraint by respondent he is detained and deprived of his liberty and property and held in custody contrary to the laws of the United States, the constitution of the state of Kansas, and against his will. The prayer was for a writ of habeas corpus discharging him from the custody of respondent.

The court issued an order that respondent release the petitioner or show cause for his detention of him on or before the 8th day of December, 1948.

On December 6 respondent filed his answer reciting that he is the duly elected, qualified and acting sheriff of Dickinson county and that as such sheriff he is holding the plaintiff, Richard Manning, pursuant to commitment issued out of the county court of Dickinson county, a copy of which was attached to his answer. On December

7 this court admitted plaintiff to bail pending the further order of the court, and the case was advanced for hearing to December 17, 1948, at which time it was presented to the court upon the briefs and oral argument of counsel.

In 1879 our legislature passed a resolution proposing an amendment to article 15 of our constitution by adding to that article section 10, to read as follows:

"The manufacture and sale of intoxicating liquors shall be forever prohibited in this state, except for medical, scientific and mechanical purposes."

At the next general election, held November 2, 1880, this proposition was adopted by the electors. It remained a part of our constitution until November 2, 1948.

Our legislature of 1947, by a concurrent resolution (Laws 1947, ch. 248), submitted a proposition to the qualified electors of the state to amend section 10, article 15 of our constitution so as to read as follows:

"Sec. 10. The legislature may provide for the prohibition of intoxicating liquors in certain areas. Subject to the foregoing, the legislature may regulate, license and tax the manufacture and sale of intoxicating liquors, and may regulate the possession and transportation of intoxicating liquors. The open saloon shall be and is hereby forever prohibited."

At the next general election, held on November 2, 1948, this proposition was adopted by the electors. Between the time of the adopting of the amendment in 1880 and its amendment in 1948, as above stated, a number of statutes pertaining to intoxicating liquors were enacted. Broadly speaking, plaintiff contends that all of those statutes became null and void upon the adoption of the amendment in 1948. The point is not well taken.

We have no occasion here to write a treatise on constitutional law or upon the law of intoxicating liquors. A few fundamental points may be noted. It is well settled that under our theory of government all governmental power is vested in the people. Normally, our federal constitution is looked upon as a grant of power, though it contains some limitations upon the powers of the states. But it specifically provides:

"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." (Ninth amendment.)

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." (Tenth amendment.)

Our own constitution contains the following:

"All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. . . ." (Bill of Rights, sec. 2.)

"This enumeration of rights shall not be construed to impair or deny others retained by the people; and all powers not herein delegated remain with the people." (Bill of Rights, sec. 20.)

Normally the people exercise their governmental powers through the legislature. Hence, the people, through their legislature, may exercise any governmental power which they have not given up to the federal government, or which they have not restrained themselves from using by their own constitution. (See *Jamison v. Flanner, Sheriff,* 116 Kan. 624, 634, 228 Pac. 82, where these questions are discussed as they pertain to the pardoning power.) Among the powers retained by the people is the exercise of the police power, or the power to pass legislation for the general welfare of the people. And it is generally recognized that under this power they may pass such laws respecting the manufacture, sale, possession, transportation, or use of intoxicating liquors as the people, through their legislature, may deem necessary or proper. We shall not labor this point, for counsel for plaintiff in their brief make statements to the same effect.

Appellant properly contends that when the 1948 amendment was voted upon at the general election of November 2, 1948, and received a majority of the votes cast upon that question it became a part of our constitution as of the day of the election. (Const., sec. 1, art. 14.) He also contends that it had the effect of repealing, as of that date, the 1880 amendment. That point may be conceded. He further contends the natural result is that all of our prohibitory liquor laws enacted since the adoption of the amendment in 1880, and still in force on November 2, 1948, which were predicated upon the 1880 amendment, became void and of no effect. We think this result does not follow. Even if that result did follow it would not be helpful to the plaintiff. Our statute (G. S. 1935, 21-2101) making it an offense for anyone to keep or have in his possession for personal use or otherwise any intoxicating liquors, upon which the first count of the complaint against defendant in the county court was predicated, was not based upon the 1880 amendment; nor was our statute (G. S. 1935, 21-2130), which described certain places as being common nuisances and providing punishment therefor,

based upon the constitutional amendment of 1880. That amendment said nothing about liquor in possession, or whether the legislature could or could not enact a statute declaring it unlawful for one to have intoxicating liquor in his possession. Neither did it say anything about nuisances as defined in G. S. 1935, 21-2130. These statutes were enacted under the general police or welfare power of the state. Certainly they were not prohibited by the constitutional amendment of 1880. Both of these sections of the statute have been upheld by numerous decisions of this court, as shown by the annotations to them in our general statutes.

Appellant argues that as soon as the polls were closed at the election of November 2, 1948, the amendment in question had been adopted by a majority vote; that it immediately became effective, and that its effect was to nullify all of our statutes pertaining to intoxicating liquors. The contention is untenable.

Aside from the last sentence in the 1948 amendment, "The open saloon shall be and is hereby forever prohibited," which has no application here, the wording of the amendment pertains to what the legislature may do. Clearly it contemplates legislative action. There is nothing in the amendment, and we are advised of nothing in the history of its submission and adoption, which would require or justify a holding that it was designed to nullify existing statutes pertaining to intoxicating liquors before the legislature has reasonable opportunity to meet and act upon them. We hold no such an intention is indicated. Everyone knew the next regular session of the legislature would begin on the second Tuesday in January, 1949,. and that it would need time to organize and for bills to be introduced, considered and enacted into law. No special session of the legislature had been called to meet on November 2 or 3, 1948, and so far as we are advised, no one expected such a session to be called. So it seems clear to us that nothing was expected to be done under the first two sentences of the amendment prior to a reasonable opportunity for legislative action. A contrary holding would mean that we had no laws on the subject of intoxicating liquors for a period of several months. No such a hiatus in our law was designed, and none such exists.

While much more might be written, there really is not much more to this lawsuit. We have examined and considered all the authorities cited by counsel and find nothing in any of them that requires a contrary conclusion.

The writ prayed for is denied.