No. 41,214

In the Matter of the Appeal of W. E. MURPHY, State Director of Alcoholic Beverage Control, from a Decision of the ALCOHOLIC BEVERAGE CONTROL BOARD OF REVIEW on the Application of GENEVA MAREA CURTIS for Renewal of a Retail Liquor License. W. E. MURPHY, *Appellant,* v. GENEVA MAREA CURTIS, *Appellee.*

(336 P. 2d 411)

Opinion filed March 7, 1959.

*John Anderson, Jr.,* Attorney General, argued the cause, and *Charles N. Henson, Jr.,* Assistant Attorney General, and *Eugene W. Davis,* Counsel, Alcoholic Beverage Control, were with him on the briefs for the appellant.

*Pat Warnick,* of Wichita, argued the cause, and *Roy L. Rogers* and *Alan B. Phares,* both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: Subsequent to annexation by the city of Wichita of a portion of an adjoining township in the remaining portion of which there was located a licensed retail liquor store, the State Director of Alcoholic Beverage Control (hereafter referred to as the director) denied an application for renewal of such license.

The applicant appealed to the State Alcoholic Beverage Control Board of Review (hereafter referred to as the board).

The board reversed the decision of the director and ordered him to issue a renewal license.

The director then appealed to the district court from the board's decision.

The district court upheld the decision of the board and ordered the director to issue the renewal license in question.

From that decision the director appealed to this court and filed a motion for an order suspending the operation of the judgment of the lower court pending disposition of the appeal.

On June 23, 1958, this court denied the motion.

The appeal is now before us on the merits.

In 1951, applicant, Geneva Marea Curtis, who resided at 1516 North St. Clair Street, Wichita, was issued a retail liquor license for premises located at 10328 Maple Street, Wichita. Both of these addresses were located in Delano Township which adjoined the city of Wichita on the west. From time to time, as it expired, her license was renewed. During all of this period the population of Delano Township was in excess of 11,000.

In May, 1956, the city of Wichita, in a proceeding the validity of

which is neither questioned nor attacked, annexed a portion of Delano Township. Included in the portion so annexed was applicant's residence, and where she continues to reside. The premises where her liquor store was (and is) located were not in the portion of the township which was annexed by the city.

As a result of the annexation the population of Delano Township was decreased, and in 1957, according to the enumeration made by the county assessor, was 3,952. In March of 1958, it was estimated to be approximately 5,000.

In December, 1957, the director refused to renew applicant's license on the ground that following the annexation applicant resided within the corporate limits of the city, whereas the premises sought to be licensed were located outside the city—that is, they remained in Delano Township. In other words, the director ruled that by reason of the extension of the city limits applicant was no longer a resident of the township in which her liquor store was located—therefore her license could not, under applicable statutes, be renewed.

Pursuant to this ruling there followed the three appeals heretofore mentioned.

Applicant has not been charged with a violation of any statute, rule or regulation pertaining to the liquor traffic, and so the only question presented by this appeal is whether the annexation by the city of a part of Delano Township brought about a set of facts and circumstances which precluded the renewal of her license.

In order to get at the question it is necessary to examine a number of provisions of the liquor control act found in chapter 41, G. S. 1949 and G. S. 1957 Supp.

G. S. 1949, 41-103, provides:

"The legislature hereby declares the public policy of this state to be: . . . (3) that no retailer's license for the sale of alcoholic liquors shall be granted to any applicant making application therefor if the premises sought to be licensed are located outside the corporate limits of any city within this state, save and except as provided in section 19 [41-303] of this act."

G. S. 1949, 41-303, reads:

"The director may license the sale of alcoholic liquor at retail in the original package on premises not located in an incorporated city for use or consumption off the premises, if such premises are located in any township having a population of more than eleven thousand (11,000). No such license shall be granted to any applicant unless he shall possess all the qualifications required of other applicants for retailers' licenses except the qualification of residence within a city."

As here pertinent, G. S. 1957 Supp. 41-311 reads:

"(2) No retailer's license shall be issued to:

"(a) A person who is not a resident of the city in which the premises sought to be licensed are located, or, in the case the premises sought to be licensed are located outside a city but within a township having a population of more than eleven thousand (11,000), is not a resident of the township;"

G. S. 1949, 41-327, provides:

"Any licensee may renew his license at the expiration thereof if he is then qualified to receive a license and the premises for which such renewal license is sought are suitable for such purposes."

As here pertinent, G. S. 1957 Supp. 41-311 reads:

"(1) No license of any kind shall be issued to:

.   .   .   .   .   .   .   .   .   .   .

"(k) A person who at the time of application for renewal of any license issued hereunder would not be eligible for such license upon a first application;"

G. S. 1949, 41-326, reads in part:

"A license shall be purely a personal privilege, good for not to exceed one year after issuance unless sooner suspended or revoked as in this act provided, and shall not constitute property, . . ."

As applied to the question before us, the foregoing provisions make it clear that no retail liquor license may be issued for premises located in a township unless the population of such township is in excess of 11,000; that in such case the licensee must be a resident of the township; that a license is a personal privilege and not a property right, and that a renewal license may not be granted to a person who at the time would be ineligible for an original license.

On the face of things, therefore—there appear to be two valid reasons why the director was correct in denying a renewal of this license. First, following the annexation, the population of Delano Township was no longer in excess of 11,000, and, secondly, applicant was no longer a resident of the township.

While conceding that she is in no position to question or attack the validity of the city's annexation proceeding whereby a portion of the township was annexed, applicant endeavors to avoid the obvious force and effect of the mentioned statutes by contending (1) that the governing body of the city cannot by ordinance change the geographical boundaries of a township or the population of such township by annexing a portion thereof, and (2) that even though such could be done by the city's action, the resulting changes do not prevent her from being eligible for renewal of her license.

Because of the nature of this case, we are of the opinion that discussion of the bare legal question of the "change of boundaries" of Delano Township would be purely academic. We therefore confine our discussion to the practical aspects of the annexation and what clearly appears to be the intended application of the mentioned liquor control statutes to the situation thus created.

We think it cannot be denied that following the annexation applicant actually, and certainly within the meaning of the mentioned statutes, became a "resident" of the city of Wichita. She then resided within its corporate limits. For all practical purposes she ceased to be a "resident" of the township. We have no doubt but that the actual population of the city was increased by the annexation—and, by the same token, that of the township was correspondingly decreased. To contend otherwise is to ignore the plain everyday facts of life. From the language used in the mentioned statutes it is clear that the legislature has referred to a "township" as being an area "outside the corporate limits of any city"— with the further proviso that its population must be in excess of 11,000 in order to have a retail liquor store located therein.

In making this population requirement as to a township perhaps the legislature intended to prevent the establishment of liquor stores in areas so sparsely populated that they could not be supported by normal legitimate purchases from residents of a reasonable trade area and thus be forced to trade in illegal or questionable channels in order to make a profit. Perhaps the legislature also was of the opinion that proper enforcement would, from a practical standpoint, be lacking in sparsely populated areas. In requiring that a licensee be a resident of the city—or the township, as the case may be— perhaps the legislature thought that such requirement would result in more strict accountability on the part of licensees and prevent "outsiders" from engaging in the business. But, whatever the purpose behind these requirements, all were matters for the legislature to determine, and not the courts.

Applicant directs our attention to G. S. 1949, 41-710, which provides that:

"No license shall be issued for the sale at retail of any alcoholic liquor on premises which: . . . (2) are located within two hundred (200) feet of any public or parochial school or college or church: *Provided,* That if any such school, college or church shall be established within two hundred feet of any licensed retail premises after such premises have been licensed, then such premises shall be an eligible location for retail licensing; . . ."

and contends that this clearly shows an intention on the part of the legislature to protect an established retail liquor store when changed conditions come about, and that it is apparent the absence of a similar provision protecting a licensee in a situation brought about by an annexation, such as we have here, was the result of an "oversight" by the legislature when the liquor control act was enacted.

Perhaps that is so, but we doubt it, and, in any event, we must take the statutes as we find them. Furthermore, it is just as logical to conclude that having made the one protective exception, it was intended not to make an exception in a situation such as exists here. Concededly, this is a "hardship" case, so to speak, and results from no act or wrongdoing of applicant. But, again we say, all such matters are for the legislature and not the courts, and if the legislature wishes to amend the law so as to protect a licensee in the position of applicant, it is free to do so.

It is unnecessary to dwell at length on the fundamental principle that the regulation and control of all phases of the liquor traffic are within the inherent police power of the state and that it is within the power of the legislature to prescribe the conditions under which liquor may be sold to the public. (*Manning v. Davis*, 166 Kan. 278, 281, 201 P. 2d 113.) Included in such power is the right to regulate the issuance of licenses and the renewal thereof. Our legislature has spoken in that regard, as evidenced by the above-quoted provisions of the liquor control act, and under them no applicant acquires a vested right, merely because once licensed, to have his or her license renewed. On the general subject of grant or renewal of a liquor license as affected by the fact that applicant held such license in the past, see the annotation at 2 A. L. R. 2d 1239.

Within the meaning of the liquor control act, applicant, at the time she applied for renewal of her license, was a "resident" of the city of Wichita, whereas the premises sought to be licensed were located in a township the population of which then was not in excess of 11,000. As applied to a license for premises located in a township, the statute requires that the licensee be a resident of the township, and further, that the population of the township be in excess of 11,000. And so, under either theory, applicant would not have been eligible to receive a license upon a first application—therefore she was ineligible to have it renewed.

The judgment is reversed.