No. 44,409

Tri-State Hotel Co., Inc., d/b/a The River Club; Ronald L. Mires, d/b/a The Charter Room; William V. Tiemeyer, d/b/a The Pheasant Club; Vernon M. Smart, d/b/a Palace Club; R. C. McCormick (An individual and member of The River Club); and Carl Murrell (an individual and member of El Matador Club), *Appellants*, v. Robert C. Londerholm, Attorney General of Kansas; Keith Sanborn, County Attorney of Sedgwick County, Kansas; J. R. Cheney, Director of Alcoholic Beverage Control; and Park McGee, Assistant Attorney General and Attorney for the Director of Alcoholic Beverage Control, *Appellees*.

(408 P. 2d 864)

Opinion filed December 11, 1965.

*Edward F. Arn,* of Wichita, argued the cause, and *Richard F. Mullins, Milo M. Unruh, H. R. Kuhn* and *Louis W. Cates,* all of Wichita, were with him on the briefs for the appellants.

*Park McGee,* Assistant Attorney General, of Topeka, argued the cause, and *Robert C. Londerholm,* Attorney General, of Topeka, and *Keith Sanborn,* County Attorney, of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

FATZER, J.: This was an action to enjoin enforcement of the provisions of Chapter 316, Laws of 1965, commonly known as "The Private Club Act." This Act defines four places in which alcoholic

liquor may be lawfully consumed, and one of those places is a "club" as therein defined. The Act, in turn, divides clubs into two classes designated as "class A" and "class B" clubs, and provides for their licensing and regulation. As Chapter 316, hereafter referred to as the Act, was interpreted by the plaintiffs, they were entitled to judgment decreeing the Act unconstitutional and to a permanent injunction against its enforcement for the reasons alleged in the petition; as interpreted by the defendants, such a judgment was unauthorized. The district court agreed with the defendants' construction of the Act, and the plaintiffs have appealed.

At the hearing on the merits for a temporary and permanent injunction, the parties stipulated to the facts, and those pertinent are summarized. The plaintiffs either operate private clubs "for profit" or are members of "for profit" private clubs where the members thereof may resort for the purpose of consuming alcoholic liquor. They have substantial investments in their private clubs or those in which they have memberships, and their use and enjoyment of their clubs' facilities, the right to operate them for profit, and their freedom to conduct their business and memberships therein will be affected and regulated by the Act if it is unconstitutional. The defendants are charged with the enforcement of the Act and will enforce its provisions against the plaintiffs unless permanently enjoined. Plaintiffs' Exhibits 1 through 4-A, consisting of rules, regulations, and bylaws of their various private clubs, indicate the means by which, and the extent to which, the members thereof determine which individuals, and which and how new members may be allowed to use their club premises. The defendants' Exhibit A consists of rules and regulations adopted by the Alcoholic Beverage Control Board pursuant to the Act, and pertains to the licensing and regulation of both class A and class B clubs, which were duly filed with the Revisor of Statutes as provided in K. S. A. 77-405 *et seq.* It should here be stated that the district court's findings of fact and conclusions of law disclosed no reference to either the plaintiffs' or the defendants' exhibits. The sole question before the district court was the constitutionality of the Act and the court's findings of fact and conclusions of law relate only to its validity.

The stipulation further disclosed that there are private clubs in the Wichita area and elsewhere, such as Country Clubs and other organizations, which could be licensed and receive the advantages

of "class A" clubs. However, the plaintiffs, being operators and members of private clubs "for profit," are deprived of the benefits afforded "class A" clubs and their members under the Act. While the plaintiffs are capable of qualifying under the Act as class B clubs by reason of the "for profit" nature of their private clubs, the Act precludes them from being licensed and receive the benefits of Class A clubs.

The plaintiffs alleged in their petition that the Act was unconstitutional and void for the reasons that (1) it violated the Fourteenth Amendment to the Constitution of the United States in that it denies to them the equal protection of the law; (2) it deprives them of their property, property rights and personal privileges without due process of law and the equal protection of the law in violation of Sections 1 and 2 of the Bill of Rights of the Constitution of Kansas; (3) it is an unreasonable and arbitrary exercise of the police power of the state and the classification provided therein has no connection with, and no relation to, the public health, morals, safety and welfare, in violation of Sections 1 and 2 of the Bill of Rights of the Constitution of Kansas; (4) it creates penalties for acts done by one class of citizens, and by reason of its unjust, unreasonable, arbitrary and unlawful classification, it violates Article 2, Section 17 of the Constitution of Kansas, and (5) its provisions are vague, uncertain and ambiguous in defining rights granted and acts prohibited to either class of clubs, and by reason of such ambiguity, persons affected by the Act cannot comply with its terms, and it lacks the first essential of due process as required by the Fourteenth Amendment to the Constitution of the United States and by Section 10 of the Bill of Rights of the Constitution of Kansas.

At the outset, and before we quote or discuss the provisions of the Act, the plaintiffs' claim that it violates the due process and the equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, should be put to rest. In *State v. Payne,* 183 Kan. 396, 327 P. 2d 1071, it was said:

"It has been repeatedly held that under the 21st Amendment a state may absolutely prohibit the manufacture, transportation, importation, sale or possession of alcoholic liquors irrespective of when or where produced or obtained, or the use to which they are to be put, and may adopt measures reasonably appropriate to effectuate those inhibitions an exercise full police authority in respect to them, unfettered by the due process clause, the equal protection clause or the commerce clause. (*State Board v. Young's Market Co.,* 299 U. S. 59, 81 L. ed. 38, 57 S. Ct. 77; *Mahoney v. Triner Corp.,* 304 U. S.

401, 82 L. ed. 1424, 58 S. Ct. 952; *Brewing Co. v. Liquor Comm'n*, 305 U. S. 391, 83 L. ed. 243; 59 S. Ct. 254; *Finch & Co. v. McKittrick*, 305 U. S. 395, 83 L. ed. 246, 59 S. Ct. 256; *Ziffrin, Inc. v. Reeves*, 308 U. S. 132, 84 L. ed. 128, 60 S. Ct. 163; *Crane v. Campbell*, 245 U. S. 304, 62 L. ed. 304, 38 S. Ct. 98; *United States v. Renken*, 55 F. Supp. 1.) This greater power to prohibit includes the lesser power to permit under definitely prescribed conditions. (*Seaboard Air Line Ry. v. North Carolina*, 245 U. S. 298, 62 L. ed. 299, 38 S. Ct. 96; *State Board v. Young's Market Co.*, supra; *Ziffrin, Inc. v. Reeves*, supra.)" (l. c. 403.)

In view of the foregoing, any possible federal question is removed from the case and our discussion of questions presented is limited solely to whether the Act, as urged by the plaintiffs, is in conflict with the Constitution of Kansas.

Preliminary to reaching the merits of this appeal, we think it proper to examine the background of liquor regulation in Kansas and to detail some of the reasons why the legislature enacted the so-called "Private Club Act." For 68 years the Constitution of Kansas prohibited the manufacture or sale of intoxicating liquor. During that time, numerous cases came before this court wherein various schemes, shifts, devices and subterfuges to evade provisions of regulatory statutes were argued as legal sanctions and authority for doing what was essentially unlawful acts. In all such cases, this court stripped those shifts, devices and subterfuges of their external and sometimes ingenious wrappings and found them to be nothing less than subtle or artful attempts to circumvent the law. In 1948 the people of Kansas changed or modified the constitutional prohibition of intoxicating liquor by the adoption of Article 15, Section 10, which authorized the legislature to regulate, license and tax the manufacture, sale, possession and transportation of such liquor, and expressly provided that "The open saloon shall be and is hereby forever prohibited." Following the mandate of the people at the general election in November, 1948, the legislature enacted the Kansas Liquor Control Act. (K. S. A. Ch. 41.) The Act was a comprehensive plan to regulate, license and tax alcoholic liquor and to control and regulate the liquor from the time of its manufacture or importation into the state until it was ultimately sold by licensed retailers for use and consumption. The Act defined "open saloon" as follows:

". . . the words 'open saloon' mean any place, public or private, where alcoholic liquor is sold or offered for sale or kept for sale by the drink or in any quantity of less than one-half pint, or sold, offered for sale, or kept for sale for consumption on the premises where sold. . . ." (K. S. A. 41-803.)

As with most attempts to write a comprehensive statute, the Kansas Liquor Control Act could not provide for all contingencies, nor could the legislature foresee the problems that would arise from making it unlawful only "to drink or consume alcoholic liquor" in "places to which the general public has access." (K. S. A. 41-719.) It is common knowledge that in the years that followed the enactment of the Kansas Liquor Control Act, so-called "private" clubs sprang up and schemes and devices were conceived to dispense alcoholic liquor to members of those clubs, which amounted to a subterfuge if not an actual sale, for consumption on the premises. A case amply demonstrating this problem is *State v. Larkin*, 173 Kan. 112, 244 P. 2d 686.

On December 14, 1964, the attorney general wrote the governor-elect that there were areas affecting law enforcement that his experience indicated the necessity of legislative action. We quote a portion of that letter:

"1. *The 'Private Club'.*

"The commercially operated drinking club is one of law enforcement's greatest problems. These so-called 'private clubs' or 'key clubs' are operated for the profit of the management. They are not 'clubs' in the ordinary sense of an organization managed and conducted by and for the membership, as are country clubs, veteran organizations and fraternal clubs.

"Existing statutes give no guide lines as to what kind of an establishment is legally private. The law only makes it unlawful 'to drink or consume alcoholic liquor' in 'places to which the general public has access.' G. S. 1949, 41-719. There are no statutory rules as to the age of the patrons, the hours of operation, or the character of the management and personnel. The peace officer has no greater authority to go into a private club than he has to enter a private residence."

. . . . . . . . . . . . .

"The existing law does prohibit the sale of alcoholic liquor by the drink in 'any place, public or private.' G. S. 1949, 41-803. This creates two substantial problems for peace officers and prosecutors. The first is: what under this statute constitutes a 'sale by the drink?' The second is the difficulty of enforcement in private clubs because of the difficulty of access by law enforcement officials to determine whether alcoholic beverages are being sold to the members and guests by the drink."

As tending to support the attorney general's recommendation, see *State, ex rel., v. Grace*, 194 Kan. 116, 397 P. 2d 331 and *State, ex rel., v. Kansas Super Motels, Inc.*, 194 Kan. 169, 398 P. 2d 331.

In January, 1965, the governor transmitted the attorney general's request for clarification of the status of "private clubs" to the 1965 Kansas legislature. In his annual message, the governor stated that he believed "the public interest would benefit from study and con-

sideration of these matters by the legislature." (Journal of the Senate, Fourth Day, p. 18.) Each member of the House and the Senate received a copy of the attorney general's letter.

Following the governor's recommendation, Senate Bill No. 280 was introduced to license and regulate private clubs. We deem it unnecessary to review and detail the legislative history of this enactment but suffice it to say after thorough discussion, the legislature enacted what is now Chapter 316 which became enforceable on July 31, 1965.

From the foregoing it is obvious that the executive department of the state government deemed it essential and in "the public interest" that the consumption of alcoholic liquor in private clubs and other places be defined and clarified; further that the legislature considered the nature of the subject matter affected the general welfare of the people of the state and it exercised the police power to define the places where alcoholic liquor might be lawfully consumed and fixed measures in advance by which this result could be accomplished. It is well settled in this state that the subject of alcoholic liquor in all its forms may be regulated by the legislature through the exercise of the police power of the state in determining its policy that the general welfare, health and safety of persons and property should be protected. (*Johnson v. Reno County Comm'rs,* 147 Kan. 211, 75 P. 2d 849; *Manning v. Davis,* 166 Kan. 278, 201 P. 2d 113; *State v. Payne,* supra; *Murphy v. Curtis,* 184 Kan. 291, 336 P. 2d 411.) The power of the legislature to regulate alcoholic liquor is broader than the power to regulate ordinary business due to its possible source of danger to the public which is not inherent to other businesses and alcoholic liquor "occupies a different status before the courts and the legislatures from other kinds of property." (*State v. Durein,* 70 Kan. 13, 80 Pac. 987, affirmed 208 U. S. 613, 52 L. Ed. 645, 28 S. Ct. 567.)

The plaintiffs first contend that Sections 1 (*d*), 16 and 18, defining a liquor pool and authorizing its establishment in a class A club, are nothing less than a scheme, subterfuge and device for the unlawful sale of alcoholic liquor and violate Article 15, Section 10 of our Constitution prohibiting an "open saloon" as defined in K. S. A. 41-803. Those sections read:

"SECTION 1. . . . (*d*) 'Liquor pool' is any arrangement whereby a club or any designated agent thereof shall purchase a quantity of alcoholic liquor for the use or consumption of any member of the club for which the purchaser is reimbursed before the purchase: *Provided.* The purchaser shall

receive for making the purchase no service charge or reimbursement which is in excess of the amount paid for said quantity of alcoholic liquor: *Provided further,* If a club shall accept funds for its liquor pool and credit members accounts therewith but not maintain the full quantity of alcoholic liquor on the premises, said club shall maintain a trust account separate from all other club funds into which the unexpended liquor pool moneys shall be deposited."

"SEC. 16. No club licensed hereunder shall sell alcoholic liquor either by the bottle, case, barrel, keg, cask or drink. The maintenance of a 'liquor pool' by a class A club shall not constitute the sale of alcoholic liquor by the drink."

"SEC. 18. For the purposes of this act, alcoholic liquor of like brand and age shall be treated as fungible goods, and pooling of such alcoholic liquor by the members of a licensed class A club shall be permitted; likewise, members of a class A club may appoint in writing an agent or agents to purchase alcoholic liquor for them or for their account to be maintained for the use of the member of the club. Any club maintaining a liquor pool shall keep at all times on the licensed premises a book of account showing the amount of alcoholic liquor credited to each member stated in brand, age, volume and dollar amount. No club maintaining a liquor pool shall have on the licensed premises at any time alcoholic liquor which may not be attributed to the collective accounts of the members except alcoholic liquor in an original package owned by a club-member and whose name is on the original package. Said books and accounts shall be available at all times to the agents of the director and all other peace officers. No alcoholic liquor from the liquor pool shall be knowingly served by the agents or employees of a club maintaining a liquor pool to a member or his guests unless that member shall have, at the time of such service, a credit balance in his liquor pool account."

The plaintiffs argue that despite the legislative declaration in Section 16 that the maintenance of a "liquor pool" by a class A club shall not constitute a sale of alcoholic liquor by the drink, the legislature cannot amend the Constitution and that in fact and in law Sections 16 and 18 do attempt to legalize an "open saloon" in violation of Article 15, Section 10 of the Constitution of Kansas and K. S. A. 41-803. They rely upon *State v. Larkin,* supra, which held that the arrangement provided in the bylaws of the "Merchants Club" for dispensing alcoholic liquor to its members for consumption on the premises constituted a subterfuge if not an actual sale, either one of which was prohibited by the Kansas Liquor Control Act. The case is not helpful to the plaintiffs. When that decision was rendered in 1952, the legislature had not defined what did not constitute a sale of alcoholic liquor. As here involved, the legislature prohibited the sale of alcoholic liquor either by the bottle, case, barrel, keg, cask or drink, in clubs licensed under the Act but de-

fined the maintenance of a liquor pool in a class A club as not constituting the sale of alcoholic liquor by the drink. Being authorized by Article 15, Section 10, to regulate the sale of alcoholic liquor, the legislature has the power to define what is not a sale so long as what is defined does not constitute an "open saloon."

The Larkin case, *supra*, is clearly distinguishable from the operation of a liquor pool as authorized by the Act and the rules and regulations of the Alcoholic Beverage Control Board. In that case the defendant club manager, who owned the premises leased to the club, sold coupon books to club members representing the value of $5.00 and $2.00 upon payment by them of $5.00 and $2.00 depending on which of the two coupon books was desired. Each coupon book contained units printed or marked thereon in amounts or denominations of five, ten or twenty-five units, respectively. When served a bottle or can of strong beer by the bartender or employee of the club, a member would surrender to the bartender or employee twenty-five units, the value of twenty-five cents, from his coupon book. When served a one-ounce glass of bourbon or scotch whiskey or a comparable amount of gin or wine liquor, a member would surrender 50 units, the value of fifty cents, from his coupon book. Glasses and ice were kept on the premises for use in serving club members alcoholic liquor or strong beer by the drink. Money derived from the sale of coupon books was used by the club manager to purchase alcoholic liquor or strong beer from licensed retail stores, which was stored and kept by him on the club premises to be dispensed to club members. The average cost of whiskey to the manager was $5.50 to $6.00 per fifth, and he obtained twenty-four or twenty-five one-ounce servings from each bottle, or a difference of $6.00 per fifth between the cost of the whiskey and the amount received from club members when served. The average cost of a case of tweny-four cans or bottles of strong beer was $4.40, or a difference of 6⅔ cents per can or bottle between the cost of the beer and the amount received from club members when served. Obviously, the Merchants Club arrangement for the sale of coupon books to members and the surrender of units of the value of the drinks when served was in fact the sale of alcoholic liquor on the premises. The coupons or units represented the value in money of the drinks served and when surrendered, were nothing less than a cash payment for the drinks, all of which netted a profit to the club manager. This court correctly concluded that such

arrangement was a subterfuge if not an actual sale, either one of which was prohibited by Sections 41-102 (15), 41-104, 41-722 and 41-803 of the Kansas Liquor Control Act.

We agree with the plaintiffs' contention that the legislature cannot amend Article 15, Section 10, by its fiat in defining an arrangement for the dispensing of alcoholic liquor by the drink as being not an "open saloon." For instance, the legislature would be powerless to attempt to authorize a plan similar to the one condemned in the Larkin case. However, as we understand the Act and the rules and regulations of the Alcoholic Beverage Control Board, the legislature did not authorize an "open saloon." Under those provisions there is no sale of alcoholic liquor by the drink in class A clubs. The general rule is that where a liquor pool is maintained as provided in the Act, the agent designated by the class A club is the agent for the member in procuring the alcoholic liquor from the licensed retail dealer. In such a situation, the agent has no personal interest in the transaction and never becomes the owner of the alcoholic liquor, and is, therefore, incapable of selling it; the sale of alcoholic liquor is to the club member who is the principal. The agent acts as an intermediary for the member and not the seller. (30 Am. Jur., Intoxicating Liquor, § 215, p. 658; 48 C. J. S., Intoxicating Liquors, § 245, pp. 374, 375.) This view was adopted by this court in *State v. Turner*, 83 Kan. 185, 109 Pac. 983, and *State v. Cairns*, 64 Kan. 782, 788, 68 Pac. 621, 58 L. R. A. 55. And for a similar case see *Reed v. State*, 3 Okla. Cr. 16, 103 Pac. 1070, 24 L. R. A. (n. s.) 268. Moreover, all orders made by members of class A clubs for the club's liquor pool shall be on order blanks approved by the director of Alcoholic Beverage Control. No class A club shall receive a service charge for the purchase of alcoholic liquor for any member's account, and the price to the member shall reflect the price actually paid to the retailer. The club shall keep a book of account showing the amount of alcoholic liquor credited to each member's account, stated in brand, age, volume and amount, and no alcoholic liquor shall be knowingly served by employees of the club to a member or his guests unless he shall have a credit in his liquor pool account. Under these circumstances, when alcoholic liquor is purchased by the agent of a class A club at a member's written direction and in his name and who has reimbursed the agent in advance as provided in the Act and the regulations and is procured and kept on the premises of the club subject to his order, the class A club is a mere

bailee or depository even though the alcoholic liquor becomes mingled with that ordered by or for other members so that it loses its identity. Being a bailment for the benefit of the member, there is no sale of alcoholic liquor when served from the club's liquor pool at his order and direction. (30 Am. Jur., Intoxicating Liquor, § 230, p. 669.) We are of the opinion the provisions of the Act are not unconstitutional as being in violation of Article 15, Section 10 of the Constitution of Kansas upon any of the grounds urged by the plaintiffs.

The constitutionality of the Act is assailed by the plaintiffs on the ground that it invidiously discriminates between private clubs in that it denys to class·B clubs the benefits and advantages afforded to class A clubs with respect to (a) costs of membership; (b) the right to include spouses, family and guests; (c) proof of character; (d) waiting periods on applications for memberships, and (e) the right to maintain a liquor pool. The Act defines "club" as an organization licensed thereunder to which the club members shall be permitted to resort for the purpose of consuming alcoholic liquor. Section 1 (b) (2) and (3) define class A and class B clubs, and read:

"(2) A class A club shall be a premises owned or leased and operated by a corporation, partnership, business trust, or association for the exclusive use of the corporate stockholders, partners, trust beneficiaries or associates (hereinafter referred to as members), their families and invited and accompanied guests, and which is not operated for a profit other than such as would accrue to the entire membership. A corporation, partnership, business, trust, or association not operated for a profit, for the purposes of the definition of a class A club shall only include such a corporation, partnership, business trust, or association which has been exempted from the payment of federal income taxes as provided by section 501 (c), (7) and (8), internal revenue code of 1954.

"(3) A class B club shall consist of a premises operated for profit by a corporation, partnership or individual, known as the management, to which premises the management allows persons, known as members, to resort for the consumption of food and/or alcoholic beverages and for entertainment. As a prerequisite for attaining membership the management must screen the applicants for good moral character. No membership may be granted within thirty (30) days of the application therefor. Each membership must be renewable annually upon payment of the annual dues of at least ten dollars ($10): Provided, however, Any class B club located on the premises of a hotel as defined in K. S. A. 36-101 may establish rules whereby guests registered at said hotel, who are not residents of the county in which said club is located, may file application for temporary membership in said club, together with an application fee of not less than two dollars fifty cents ($2.50) for each registration, which membership, if granted, shall only be valid for the period of time that they are a bona fide registered guest at said hotel. Said temporary

membership shall not be subject to the waiting period or dues requirement contained in this section. Said temporary member shall be served alcoholic liquor only from an original package purchased by him from a Kansas licensed retailer which original package is clearly marked with the name of the temporary member."

The plaintiffs argue that the Act regulates and classifies club ownership and the rights of members of such clubs on the basis that class B clubs are operated "for profit" while class A clubs are not operated "for profit"; that such classification based solely on "profit" or "nonprofit" operation has no real relation to the public welfare in regulating places where alcoholic liquor may be lawfully consumed, and that it is an unreasonable and arbitrary classification which violates the Constitution. They cite and rely upon *City of Derby v. Hiegert,* 183 Kan. 68, 325 P. 2d 35; *State, ex rel., v. Consumers Warehouse Market,* 185 Kan. 363, 343 P. 2d 234, and *Boyer v. Ferguson, et al.,* 192 Kan. 607, 389 P. 2d 775. In support of their argument, they concede that a uniform private club law could be enacted by the legislature, but contend that a law is not uniform which provides for an arbitrary classification of citizens whereby one class of citizens can operate in a certain manner, all of which when done by another class of citizens would subject the latter class to fines, penalties and the confiscation of their property. They further argue that the classification made by the Act on the basis of "profit" or "nonprofit" is no wise similar to the classification between "all clubs" on the one hand, and "private homes" on the other, which was sustained in *State v. Topeka Club,* 82 Kan. 756, 109 Pac. 183, and that the public welfare is not served by a legislative act designed to accomplish that purpose and, in the same Act, exempt a group of so-called "class A" citizens from its requirement while demanding that all other citizens abide.

The provisions of our Constitution which are violated by the Act, if it is beyond the police power of the state as the plaintiffs contend, are Sections 1 and 2 of our Bill of Rights, which declare that "[a]ll men are possessed of equal and inalienable natural rights, among which are life, liberty and the pursuit of happiness," and that "all free governments . . . are instituted" for the "equal protection and benefit" of the people. While those two provisions of our Bill of Rights declare a political truth, they are given much the same effect as the clauses of the Fourteenth Amendment relating to due process and equal protection of the law. (*Winters v. Myers,* 92 Kan. 414, 421, 140 Pac. 1033; *State v. Wilson,* 101 Kan. 789, 796,

168 Pac. 679; *Chamberlain v. Railway Co.,* 107 Kan. 341, 344, 191 Pac. 261; *Railroad and Light Co. v. Court of Industrial Relations,* 113 Kan. 217, 229, 214 Pac. 797; *Central Kansas Power Co. v. State Corporation Commission,* 181 Kan. 817, 828, 316 P. 2d 277.)

This court is by the Constitution not made the critic of the legislature, but rather, the guardian of the Constitution; and every legislative act comes before this court surrounded with the presumption of constitutionality. That presumption continues until the Act under review clearly appears to contravene some provision of the Constitution. All doubts of invalidity must be resolved in favor of the law. It is not in our province to weigh the desirability of social or economic policy underlying the statute or to question its wisdom; those are purely legislative matters. (*Topeka Laundry Co. v. Court of Industrial Relations,* 119 Kan. 12, 16, 237 Pac. 1041; *State v. Hill,* 189 Kan. 403, 408, 369 P. 2d 365, 91 A. L. R. 2d 750; *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P. 2d 537; *Gilbert v. Mathews,* 186 Kan. 672, 352 P. 2d 58; *Grigsby v. Mitchum,* 191 Kan. 293, 302, 303, 380 P. 2d 363; *Little v. Smith,* 124 Kan. 237, 240, 257 Pac. 959, and *Martin v. Davis,* 187 Kan. 473, 357 P. 2d 782, appeal dismissed 368 U. S. 25, 7 L. Ed. 5, 82 S. Ct. 1.) While the legislature is vested with a wide discretion to determine for itself what is inimical to the public welfare which is fairly designed to protect the public against the evils which might otherwise occur, it cannot, under the guise of the police power, enact unequal, unreasonable or oppressive legislation or that which violates the Constitution. If the classification provided is arbitrary, as the plaintiffs contend, and has no reasonable relation to objects sought to be attained, the legislature transcended the limits of its power in interfering with the rights of persons affected by the Act. (*Little v. Smith,* supra; *Gilbert v. Mathews,* supra.)

In determining whether a classification in a statute enacted under the police power is reasonable, the following guidelines appear evident from the decisions of this court: (1) A classification having some reasonable basis does not offend against Sections 1 and 2 of our Bill of Rights merely because it is not made with mathematical nicety or because in practice it results in some inequality; (2) there is no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities— in a classification for governmental purposes there need not be an exact exclusion or inclusion of persons and things; (3) if any state

of facts reasonably can be conceived that would sustain the Act, their existence at the time the law was enacted must be presumed; (4) within the zone of doubt and fair debate, the legislative determination is conclusive upon the court and must be upheld, and (5) one who assails the classification must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. A few of our many cases are *State, ex rel., v. Sage Stores Co.*, 157 Kan. 404, 141 P. 2d 655; *Gilbert v. Mathews*, supra; *Martin v. Davis*, supra, and *Grigsby v. Mitchum*, supra.

The express purpose of the Act is to define and regulate places where alcoholic liquor might be lawfully consumed in the state. The subject matter being one attendant with danger to the state, the legislature could authorize or prohibit its consumption under such conditions as it deemed essential to impose so as to limit its evil propensities to the utmost degree. (*State v. Nossaman*, 107 Kan. 715, 193 Pac. 347.) It is elementary law that the people may exercise all governmental powers not surrendered by them to the federal government and which they have not restrained themselves by the provisions of their own state Constitution. While Article 15, Section 10 of the Kansas Constitution is authorizing in nature, it restrains the legislature in its power to tolerate only, not in its power to suppress. It clearly does not abridge or limit the power of the legislature to determine the extent or places or conditions to which, or upon which, alcoholic liquor may be consumed in the state. No right to determine the extent to which alcoholic liquor may be consumed was reserved to the plaintiffs, and they must abide by the regulations adopted by the legislature. What the legislature may entirely withhold, it may grant upon such terms as it may see fit. Any conditions which in its wisdom it may deem necessary to impose, must be met and endured. In other words, the legislature was empowered to prohibit the consumption of alcoholic liquor in licensed class A and class B clubs; it had the power to permit the consumption of alcoholic liquor in both types of clubs upon such conditions as it saw fit to impose, or to permit its consumption in one type club and entirely prohibit its consumption in the other. Whether as a matter of policy the legislature ought to have enacted the Act it did, this court has no right to say. That it had the power, under the law, to do so, this court cannot, under the law, do otherwise than declare. (*State v. Durein*, supra.)

The foregoing would seem to dispose of the case. However, we

feel compelled to answer the plaintiffs' argument that the legislature, having defined "club" and having enacted a law permitting the consumption of alcoholic liquor therein, is powerless to provide a classification which distinguishes between the types of clubs authorized to be licensed, based solely upon their being operated for profit or not for profit.

Are the clubs defined truly in the same position and truly of but one classification? As previously indicated, it was common knowledge that in the years that followed the enactment of the Kansas Liquor Control Act, commercially operated drinking clubs, or so-called "private" or "key" clubs, became one of law enforcements greatest problems. Such clubs were operated for the profit of the management and were not clubs in the ordinary sense of an organization owned and controlled exclusively by and for the members for the promotion of the same common object. In the so-called "private" or "key" clubs, schemes and devices were conceived to dispense alcoholic liquor to members to evade the provisions of the Kansas Liquor Control Act which amounted to a subterfuge if not an actual sale. There were no laws governing the age of patrons of those clubs, the hours of opening and closing, or the character of the management and personnel, and no guidelines were provided for the admission of members to insure that the club premises were not places to which the public had access but were legally private. Note, for instance, this court held in the *Grace* case that one who presented himself at a so-called private club stating he wished to join the club and by paying a $10.00 membership fee he was admitted to the premises, was a sufficient allegation that the club was open to the general public. Many other facts could be marshalled leading to the conclusion that the so-called "private" or "key" clubs not merely required, but deserved, on account of matters touching their operation and management, treatment different from organized clubs owned and operated exclusively for the benefit of the members, both in kind and degree; but the general considerations outlined above are sufficient. The Act represents a serious effort on the part of the legislature to deal justly with a subject of great public concern. The legislature's conclusion that the types of clubs authorized to be licensed were not of one classification but were essentially different in organization and operation, was based upon reasoning apparently sound, supported by experience which was verified, and amply justified its use of the profit-

nonprofit classification affording different treatment of the two classes of clubs throughout the Act. Moreover, the use of profit-nonprofit classification is now new in the legislative history of the state. The legislature has used this distinction for many years in classifying corporations organized under our law. Nonprofit organizations operated for the promotion of pleasure, recreation and other nonprofit purposes, where no part of the net earnings inure to the benefit of any private member, are exempted from state income tax. (K. S. A. 79-3204 [2] and [8].) Private corporations organized for profit are required to go through more complicated procedures to incorporate than nonprofit corporations and are not exempt from income tax. See, generally, K. S. A. 17-2801, *et seq.* and 17-2901, *et seq.*

Does the legislature's classification of profit-nonprofit operation of the type of clubs authorized to be licensed bear a real, logical and substantial relation to the public welfare? The legislature has a wide range of discretion in distinguishing, selecting and classifying, and it is sufficient to satisfy the demands of Sections 1 and 2 of the Bill of Rights if a classification is practical and not palpably arbitrary. (*Martin v. Davis,* supra.) In defining places where alcoholic liquor might be lawfully consumed and to obtain compliance with the Kansas Liquor Control Act, the legislature sought to provide standards to insure that premises of a club operated for profit was not a place to which the public had access but was legally a private place. The legislature was not required to rely upon the bylaws or rules and regulations of such clubs to determine the prerequisites for attaining membership. Private club regulations previously before this court were found inadequate to insure that the club premises were not "open to the public." (*State, ex rel., v. Grace,* supra; *State, ex rel., v. Kansas Super Motels, Inc.,* supra.) Hence, the regulations requiring an annual membership fee of at least $10.00; a waiting period on applications for membership of at least 30 days (except for temporary membership of guests registered at a hotel as defined in K. S. A. 36-101), and proof of character requirements were within the legislative competence and bear a fair and reasonable relation to the public welfare in determining private places where alcoholic liquor may be lawfully consumed. Likewise, the fact that class A clubs are authorized to maintain a liquor pool and class B clubs are not so privileged does not condemn the Act. Neither does the Act condemn the profit system.

The legislature recognized that clubs operated for profit required greater regulation than nonprofit clubs and doubtless believed that if clubs operated for profit were authorized to maintain a liquor pool, the management might easily convert the pool into a medium for a subterfuge if not an actual sale of alcoholic liquor, and to prevent such an occurrence, withheld that privilege. In doing so, the legislature was justified in believing that a club operated for profit, in the very nature of things, would do everything possible to enlarge its income by increasing the number of its patrons through greater efforts to provide more services for its patrons. Thus, the profit-nonprofit character of a club's operation serves to amplify the real distinction between the two types of clubs authorized to be licensed, and justified the legislature's conclusion that clubs operated for profit should not be granted all the privileges of clubs not operated for profit. Clearly, this was in the province of the legislature and bears a real, logical and substantial relation to the public· welfare in regulating the consumption of alcoholic liquor in the state.

The plaintiffs' objection that the Act discriminates between class A and class B clubs with respect to the admission of a member's spouse, family and guests, is inconsequential. Under the regulations of the director of Alcoholic Beverage Control the word "member" as used in the Act includes the spouse of any person actually on the membership rolls of a club. (Regulation 14-18-2, filed with the Revisor of Statutes June 16, 1965.)

The plaintiffs claim that the Act violates Article 2, Section 17 of the Constitution of Kansas by reason of its unjust, unreasonable, arbitrary and unlawful classification. The point is not well taken. The Act is a law of a general nature and has uniform operation throughout the state. Wherever located in the state, either type of club authorized to be licensed may apply for and, if otherwise eligible with respect to organization and operation as provided in the Act and the regulations, may be licensed by the director of Alcoholic Beverage Control as the type of club sought to be licensed. The plaintiffs' objection to the classification is that it denied equal protection of the law with respect to the structure and operation of a club and not that the Act does not operate uniformly throughout the state. The Act affords the plaintiffs the right to organize and operate their clubs on a nonprofit basis and license them as class A clubs and exercise all the privileges granted by the Act, but if

they operate their clubs for profit they are required to conform to the requirements of the Act relating to class B clubs.

The plaintiffs argue that the Act is vague, uncertain and ambiguous in defining the rights granted to clubs authorized to be licensed. We deem it unnecessary to state and discuss the various grounds urged in support of the contention. The test of determining whether a statute is vague and ambiguous is whether the language conveys a sufficient definite warning as to the prescribed conduct when measured by common understanding and practice. (*State v. Hill,* supra.) We have thoroughly examined the Act and the provisions claimed to be vague, uncertain and ambiguous and we conclude that the Act is sufficiently explicit in its description of the acts, conduct, and conditions required or forbidden to prescribe the rights of persons thereunder with reasonable certainty so that men of common intelligence are not required to guess at its meaning.

We have considered, not overlooked, the cases cited and relied upon by the plaintiffs, and they are not in point. Likewise, we have considered other contentions urged by the parties and find them to be without merit.

It was within the competence of the legislature to determine the places where alcoholic liquor may be lawfully consumed in the state and to prescribe conditions with respect to the exercise of that right. The Act is not unconstitutional upon any of the grounds urged by the plaintiffs.

The judgment is affirmed.

FONTRON, J., concurs in the result.